3 So.3d 1204 (2009)
Gerhard HOJAN, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-1687.
Supreme Court of Florida.
February 27, 2009.
*1207 John G. George of John G. George, P.A., Fort Lauderdale, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
This case is before the Court on appeal from convictions of first-degree murder and other crimes and two sentences of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

FACTS
Gerhard Hojan was charged with armed robbery, armed kidnapping, attempted murder, and murder arising out of the events of Monday, March 11, 2002. The evidence presented at Hojan's trial established that at approximately 4 a.m., Hojan and Jimmy Mickel entered the Waffle House where the victims, Barbara Nunn, Christina De La Rosa, and Willy Absolu worked. Hojan and Mickel had eaten at that Waffle House on several prior occasions, and the victims recognized and knew Hojan and Mickel. Mickel had also previously worked at that Waffle House. Additionally, Nunn knew Mickel and Hojan from attending a club where Mickel and Hojan worked and where they had previously admitted Nunn for free.
After eating breakfast, Mickel exited the Waffle House. He returned with a pair of bolt cutters and went toward the employee section of the restaurant. Hojan produced a handgun and ordered Nunn, De La Rosa, and Absolu into the back of the kitchen, where he directed them into a *1208 small freezer and shut them inside. While Mickel cut the locks to various cash stores, Hojan returned to the freezer a total of three times. First, Hojan returned and demanded that the victims give him any cell phones they had. Next, he returned and demanded their money. Finally, he returned and ordered the victims to turn around and kneel on the floor. Nunn protested and tried to persuade Hojan not to kill them, but Hojan nevertheless shot each of the victims. Nunn was shot in the back of the head as she attempted to move away from the weapon. Absolu was shot twice, once through the arm and neck, in what appeared to be a defensive wound, and a second time in the head. De La Rosa was shot twice as she tried to hide under a rack in the freezer. One of the bullets pierced her spine, and the other gunshot to her neck caused massive blood loss. Hojan then left the victims for dead.
Nunn survived and awoke later with Absolu's legs on top of her body. She crawled out of the freezer and went next door to a gas station. There, with the help of the night attendant, she called 911 and subsequently her mother and sister. Law enforcement officers arrived and arranged for Nunn to be taken by ambulance and then helicopter for treatment of her head wound. Prior to her helicopter flight, Nunn gave law enforcement officers a taped statement, in which she identified Mickel and Hojan as being involved. She described Mickel by name and as a former Waffle House employee, and referred to Mickel's friend as "a big Mexican" and also as "[t]he Mexican." Hojan was soon apprehended at his parents' house and he subsequently confessed.
Hojan was convicted of two counts of first-degree murder for the death of Absolu and De La Rosa; one count of attempted first-degree premeditated murder as to Nunn; one count of attempted first-degree felony murder as to Nunn; three counts of armed kidnapping; and two counts of armed robbery. State v. Hojan, No. 02-5900CF10B (Fla. 17th Cir. Ct. sentencing order filed Aug. 2, 2005) at 1 (Sentencing Order). The jury recommended death by a vote of nine to three, and the trial court followed that recommendation and imposed two death sentences for the murders of Absolu and De La Rosa.[1] In sentencing Hojan to death, the trial court found six aggravators, one statutory mitigator, and two nonstatutory mitigators. The aggravators found were: (1) Hojan committed a prior capital felony  the contemporaneous murders and attempted murder; (2) Hojan committed the murders in the course of an armed kidnapping; (3) the murders were committed to avoid arrest; (4) the murders were committed for financial gain; (5) the murders were heinous, atrocious, or cruel (HAC); and (6) the murders were cold, calculated, and premeditated (CCP). The statutory mitigator found was that Hojan had no significant prior history of criminal activity; however, the trial court found that this mitigator was undercut by Hojan's crimes that were contemporaneous to the murders. The two nonstatutory mitigators found were: (1) the defendant was a good son, parent, and provider; and (2) the defendant showed good behavior while incarcerated and during the proceedings. The trial court gave each aggravator great weight individually and gave each mitigator little weight individually. The court found that the "aggravating circumstances in this case far outweigh the mitigating circumstances," and that this finding would not change even if the avoid arrest and CCP aggravators were not found to exist. Sentencing Order at 16-17.
*1209 On appeal, Hojan raises five claims. He argues that (1) the surviving victim's statement to an officer at the scene was not an excited utterance; (2) the trial court improperly treated Hojan's waiver of the opportunity to present mitigating evidence in the penalty phase as a waiver of his opportunity to present motions challenging the death penalty; (3) his confession should have been suppressed; (4) Florida's death penalty statute is unconstitutional;[2] and (5) the trial court committed error under Koon v. Dugger, 619 So.2d 246 (Fla.1993), and Muhammad v. State, 782 So.2d 343 (Fla.2001). We independently assess the sufficiency of the evidence and the proportionality of Hojan's sentence. We find no error under Hojan's five asserted claims, find that sufficient evidence exists, and conclude that the death sentence is proportional. Accordingly, we affirm the trial court's order sentencing Hojan to death.

ANALYSIS

Excited Utterance Exception
In Hojan's first claim, he argues that a statement made by Nunn identifying "[t]he Mexican" as the shooter was improperly admitted as an excited utterance. The statement at issue was made after Nunn was put in a medical vehicle once the paramedics arrived and in preparation for her flight by helicopter to receive additional treatment. Nunn gave this statement to Officer Patrick Donnelly while she was in the medical vehicle and while Officer Donnelly was asking Nunn a series of questions, some of which Nunn answered with a simple "yes" or "no" and others which Nunn answered with brief factual statements.
This Court has stated "that to qualify as an excited utterance, [a] statement must be made: (1) `regarding an event startling enough to cause nervous excitement'; (2) `before there was time to contrive or misrepresent'; and (3) `while the person was under the stress or excitement caused by the event.'" Hudson v. State, 992 So.2d 96, 107 (Fla.2008) (quoting Henyard v. State, 689 So.2d 239, 251 (Fla. 1996)), cert. denied, ___ U.S. ___, 129 S.Ct. 1360, ___ L.Ed.2d ___ (2009); see also § 90.803(2), Fla. Stat. "While an excited *1210 utterance need not be contemporaneous to the event, it must be made while the declarant is under the stress of the startling event and without time for reflection." Hutchinson v. State, 882 So.2d 943, 951 (Fla.2004); see also Rogers v. State, 660 So.2d 237, 240 (Fla.1995). "[This Court] review[s] a trial court's decision to admit evidence under an abuse of discretion standard." Hudson, 992 So.2d at 107 (citing Williams v. State, 967 So.2d 735, 747-48 (Fla.2007); Johnston v. State, 863 So.2d 271, 278 (Fla.2003)).
We have previously found statements given in question-and-answer exchanges by officers under similarly stressful situations to be excited utterances. See, e.g., Henyard, 689 So.2d at 251 (holding victim's statements made to officer at scene were excited utterances); Pope v. State, 679 So.2d 710, 713 (Fla.1996) (holding victim's statement to officer during questioning at scene was an excited utterance). However, we do not here reach the issue of whether the admission of Nunn's statement as an excited utterance was an abuse of discretion because we conclude that any error in admitting her statement would be harmless error.
The test for harmless error is set out in State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Under DiGuilio, "[t]he question [for harmless error analysis] is whether there is a reasonable possibility that the error affected the verdict." Id. at 1139. This Court has held that where the evidence introduced in error was not the only evidence on the issue to which the improper evidence related, the introduction can be harmless. See, e.g., Hutchinson, 882 So.2d at 952-53 (finding the introduction of statements harmless where the statements were not the only evidence on the issue); Henyard, 689 So.2d at 251 (finding any error harmless in introduction of victim's excited utterances by officer where victim also testified at trial to same information).
In this case, there was substantial testimony by other witnesses that duplicated Nunn's statement from the ambulance that "[t]he Mexican" was the shooter. Gas station attendant Kahn testified that Nunn told her that he should not open the door to the gas station because "two guys ... want to kill me.... One Mexican and one White." Paramedic Steven Cacciola testified that Nunn told him in the gas station that a Mexican who was with Jimmy had shot her. Officer Donnelly testified that Nunn stated in the gas stationprior to and separate from Nunn's statements to him in the ambulancethat an ex-employee and a Mexican had robbed the Waffle House. Nunn herself also testified in court that Hojan shot her and the two other victims. Nunn stated that she previously identified Hojan as the shooter in a photo lineup, and JoAnn Carter, a Davie police detective, also testified that Nunn identified Hojan as the shooter in a photo lineup at the hospital. Finally, Hojan confessed in his taped statement that he shot the victims, and that confession was played for the jury. Based on this other extensive evidence, we conclude that even if admission of the statement was error, it was harmless error.

Waiver of Motions
Next, Hojan argues that the trial court improperly concluded that his waiver of the right to present mitigation evidence during his penalty phase was also a waiver of presentation of post-trial motions. At his trial, Hojan waived his right to present mitigating evidence and instructed his friends and family members not to assist in any investigation into his background. Hojan also instructed his attorneys and the court to withdraw from consideration several motions filed challenging various aspects of the death penalty and of the penalty phase proceedings. Hojan appears to argue both that it was error for the trial court to permit Hojan to withdraw *1211 the penalty-phase motions and that the trial court confused Hojan by conflating waiver of the penalty phase motions with waiver of presentation of mitigating evidence. We deny this claim.
Competent defendants who are represented by counsel maintain the right to make choices in respect to their attorneys' handling of their cases. This includes the right to either waive presentation of mitigation evidence or to choose what mitigation evidence is introduced by counsel. See, e.g., Boyd v. State, 910 So.2d 167, 189-90 (Fla.2005) ("Whether a defendant is represented by counsel or is proceeding pro se, the defendant has the right to choose what evidence, if any, the defense will present during the penalty phase."). Defendants also have the right to proceed pro se in capital trial proceedings. See, e.g., Durocher v. Singletary, 623 So.2d 482, 483 (Fla.1993) ("Competent defendants have the constitutional right to refuse professional counsel and to represent themselves, or not, if they so choose.") (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Hamblen v. State, 527 So.2d 800 (Fla. 1988)). We have also held that a capital defendant has the right to withdraw Florida Rule of Criminal Procedure 3.850 motions filed on the defendant's behalf. See Sanchez-Velasco v. State, 702 So.2d 224 (Fla.1997) (affirming postconviction court's allowing defendant to withdraw his rule 3.850 motion and affirming postconviction court's dismissal of collateral counsel). "[T]he defendant, not the attorney, is the captain of the ship." Nixon v. Singletary, 758 So.2d 618, 625 (Fla.2000) ("Although the attorney can make some tactical decisions, the ultimate choice as to which direction to sail is left up to the defendant.").
Hojan expressly and repeatedly waived his right to present mitigating evidence on numerous occasions. Additionally and separately, Hojan expressly informed his attorneys and the trial court that he did not want any motions filed on his behalf during the penalty phase or afterwards. Hojan also expressly informed his attorneys and the court that he wanted the motions that had been filed withdrawn. The trial court specifically asked Hojan about each motion that had been filed and whether Hojan wanted to withdraw it. During this colloquy, which filled twenty-four pages of transcript, the trial court explained each motion to Hojan to make certain he understood what he was withdrawing and then expressly asked Hojan if he wanted to withdraw the motion. Hojan answered affirmatively for every motion, every time he was asked. Hojan did not waver in his decision not to present mitigation or post-trial motions. Instead, he consistently refused to allow his attorneys to participate in any capacity on his behalf in the penalty phase.
Hojan's refusals involved over twenty separate affirmations that occurred over the course of several months and multiple trial dates. Hojan was found to be competent to make these waivers. See, e.g., Sentencing Order at 2. Hojan was evaluated by Dr. Block-Garfield; Hojan's attorneys stated that they never had any reason to doubt Hojan's competency; and the trial court concluded after an extended colloquy with Hojan that he had no trouble concluding that Hojan knew what he was doing and that it was the product of "cool reflection."
Given that (1) the defendant is captain of the ship, (2) Hojan expressly and repeatedly waived presentation of mitigation and withdrew his counsel's various motions, and (3) Hojan was found competent, we conclude that the trial court committed no error in permitting Hojan to withdraw the motions he withdrew. As stated above, "the defendant, not the attorney, *1212 is the captain of the ship." Nixon, 758 So.2d at 625. A defendant can control what mitigation is presented, Boyd, 910 So.2d at 189-90, or can waive the penalty phase altogether, Koon, 619 So.2d at 249. We therefore conclude that a defendant can also waive the presentation of motions filed by his counsel. "[T]here is no doubt that `death is different,' but, in the final analysis, all competent defendants have a right to control their own destinies." Hamblen, 527 So.2d at 804. Further, Hojan, like any competent defendant, could have discharged his counsel and proceeded pro se, Durocher, 623 So.2d at 483, at which point he could have personally withdrawn the motions. Accordingly, Hojan has not established any basis upon which this Court should conclude that it was error for the trial court to permit Hojan to withdraw motions at Hojan's explicit, on-the-record request, and we deny relief on this issue.

Suppression of Confession
In this issue, Hojan argues that the trial court incorrectly denied his motion to suppress his taped confession. Hojan claims that there is not sufficient evidence in the record indicating that he was ever read Miranda[3] warnings or that any such warnings given were proper. We affirm the trial court's denial of Hojan's motion to suppress.
"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Rolling v. State, 695 So.2d 278, 291 (Fla.1997) (citing McNamara v. State, 357 So.2d 410, 412 (Fla.1978)); see also Schoenwetter v. State, 931 So.2d 857, 866 (Fla.2006) (repeating this quote). In reviewing a trial court's ruling on a motion to suppress, we have applied a two-step analysis in which courts must determine whether "(1) competent, substantial evidence supports the trial court's findings of historical fact; and (2) [whether] the trial court reached the correct legal conclusion that [a defendant] knowingly, intelligently, and voluntarily waived his [or her] Miranda rights." Thomas v. State, 894 So.2d 126, 136 (Fla.2004) (citing Connor v. State, 803 So.2d 598, 608 (Fla.2001)). "An invalid waiver, like an involuntary confession, can serve as a basis for suppressing [a defendant's] statements." Sliney v. State, 699 So.2d 662, 668 (Fla.1997).
The trial court in this case held an evidentiary hearing to address Hojan's motion to suppress. After hearing the testimony of several law enforcement officers, the trial court denied Hojan's motion. Subsequently, it issued a written order. State v. Hojan, No. 02-5900CF10B (Fla. 17th Cir. Ct. order filed Nov. 14, 2003). The trial court found that (1) Detective Anton read Hojan his Miranda rights and asked Hojan if he understood those rights; (2) Hojan replied that he was read them and understood them; and (3) after Hojan affirmed that he had been read Miranda warnings, "[t]he Defendant was still willing to talk with [Anton]" on the tape. Id. at 3. Ultimately, the trial court held that Hojan was advised of his Miranda rights prior to being questioned and that he voluntarily waived those rights.[4]
*1213 We affirm the trial court's ruling denying Hojan's motion to suppress. Competent, substantial evidence supports the trial court's finding that Hojan was read his Miranda warnings. Detective Anton of the Davie Police Department testified at the suppression hearing that he read Hojan Miranda warnings from a prepared text. Hojan also expressly stated on the tape-recorded confession that he had been read his Miranda rights and that he understood them. Immediately after stating the case number and parties present, the following exchange occurred on the tape between Detective Anton and Hojan:
Q Prior to going on tape we talked a little bit?
A Yes, sir.
Q Were you advised of your Miranda rights?
A Yes, sir.
Q And those rights that I read to you, did you understand those completely?
A Yes.
Q Having those rights in mind, are you still willing to talk to us?
A Yes.
Detective Anton then asked Hojan whether he was taking any medication, whether he was impaired, and whether his "judgment [was] messed up." Hojan answered "no" to each question. Accordingly, we find that competent, substantial evidence supports the trial court's findings, and we affirm the order denying Hojan's motion to suppress. See Sliney, 699 So.2d at 668-69 (upholding admission of confession where defendant failed to sign bottom portion of written waiver but officers testified that defendant waived his rights); Hogan v. State, 330 So.2d 557 (Fla. 2d DCA 1976) (upholding a trial court's admission of confession where defendant had not signed a written waiver of his Miranda rights because officer testified at trial that he read defendant his rights and defendant stated he understood them and was still willing to talk).

Koon v. Dugger and Muhammad v. State

In this claim, Hojan argues that (1) the trial court erroneously permitted Hojan to prevent his attorney from giving mitigation evidence to the trial court; (2) the trial court gave the jury's recommendation improper weight since the jury did not hear mitigation evidence; (3) the trial court failed to consider certain mitigating evidence that it could have considered; (4) specially appointed counsel, Hilliard Moldof, did not present sufficient mitigation evidence, and the expert Moldof retained did a poor job; and (5) the trial court did not consider the presentence investigation (PSI) report. We deny relief on all five subclaims.
First, Hojan alleges that he is entitled to a new penalty phase because the trial court erroneously permitted Hojan to prevent his attorneys from proffering what mitigation evidence they had found. When Hojan's attorneys attempted to proffer the mitigation evidence they had discovered, Hojan objected and insisted that his attorneys not proffer the evidence to the court as is required under Koon. In Koon, we established a three-part procedure for addressing a defendant's waiver of his or her right to present mitigating evidence. First, "counsel must inform the court on *1214 the record of the defendant's decision." 619 So.2d at 250. Next, "[c]ounsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be." Id. (emphasis added). Finally, "[t]he court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence." Id. Hojan seizes on the last portion of the second step of Koon where counsel must tell the court "what [the mitigating] evidence would be." Id.
This Court's "primary reason for requiring [the Koon] procedure was to ensure that a defendant understood the importance of presenting mitigating testimony, discussed these issues with counsel, and confirmed in open court that he or she wished to waive presentation of mitigating evidence." Chandler v. State, 702 So.2d 186, 199 (Fla.1997). In other words, Koon focuses on ensuring that the defendant understands his or her rights and is waiving them intelligently.
In this case, defense counsel John Cotrone informed the trial court that he had conducted an investigation of mitigation and had presented the information found to Hojan. Cotrone stated, "We have a number of witnesses here, we filed a Defense witness list and we have statements of those individuals as well." Cocounsel Mitchell Polay then stated:
Mr. Cotrone and myself have spoken to Mr. Hojan countless times. I have spoken to his family, I've spoken to family friends....
We've discussed every aspect of what mitigation is. I've explained to Mr. Hojan that he has an absolute right to present mitigating circumstances. We've gone over these mitigating circumstances, we've gone over what each and every witness could say in front of the jury so that they can come back with a recommendation of life; however, he has ordered both myself and Mr. Cotrone... not to present any mitigation in any way, shape or form, not to present testimony. That's where we're at, Judge.
Additionally, I just want to point out one thing. As soon as I got wind as soon as Mr. Hojan told me that he does not wish to present any type of mitigation, I had the Court order an evaluation [of his competency].
The trial court then asked if Hojan had reviewed that competency report, and Hojan stated that he did not disagree with the report's finding that he was competent.
Next, the trial court engaged in a lengthy evaluation under Koon of whether Hojan's waiver of mitigation was knowingly, voluntarily, and intelligently made. The court noted that Hojan had filed a document stating that he waived mitigation and that, prior to waiving it, he had been made "aware of my Penalty Phase Lawyer's efforts to properly prepare for any penalty phase proceeding. Such efforts have included, but not limited to, interviews with my mother, and other family members, interviews with childhood friends, interviews with county jail employees, as well as various document searches and relevant records."
The court then asked defense counsel to proffer, pursuant to Koon, what evidence they had discovered, and Hojan stated that if the court made counsel proffer evidence, he would fire his attorneys immediately. *1215 Hojan stated that "even if you appoint somebody else, sir, I'm going to ask you to relieve them again." Defense counsel then stated that they had all of the mitigating evidence in hand at the proceeding, that Hojan had reviewed it and they had discussed mitigating evidence possibilities, and that counsel was ready to file that proffer with the court. Hojan, however, insisted that the mitigation packet not be filed with the court in any form. Hojan repeatedly affirmed that he had reviewed the packet and did not want it presented in any formnot to the jury, not to the court in camera, and not to this Court in his appeal.
Nevertheless, significant information about the defense's preparation for presenting mitigation exists in the record. Defense counsel stated that they had "discussed every aspect of what mitigation is.... We've gone over these mitigating circumstances, we've gone over what each and every witness could say in front of the jury so that they can come back with a recommendation of life...." Hojan also signed a statement that noted defense counsel's efforts "included, but [were] not limited to, interviews with [Hojan's] mother, and other family members, interviews with childhood friends, interviews with county jail employees, as well as various document searches and relevant records." The State also proffered that it had previously provided to the defense a packet addressing Hojan's education records, employment records, financial records, statements to the police, his parents' statements, Hojan's divorce papers, a deposition from his ex-wife, and other documents. The State read into the record the names of the witnesses from the defense's four witness lists that were filed at various points during the proceedings. Hojan stated on the record that he had an opportunity to review all of this information with his attorneys. Attorneys for the State and for Hojan also read into the record the names or identities of nine witnesses who were in court and ready to testify on Hojan's behalf. Defense cocounsel Polay also stated that he had additional individualsincluding three expert witnessesready to testify on Hojan's behalf if Polay called them and told them that Hojan was no longer refusing to present mitigation. Based on these facts within the record, we find no error in the trial court's determination that the defendant knowingly, intelligently, and voluntarily waived his right to mitigation, and we deny relief on this claim.
In Hojan's second claim, he argues that the trial court erred by giving the jury's recommendation great weight despite the fact that the jury was not presented with any mitigation evidence. We stated in Muhammad that it was error to give a jury's advisory sentence "great weight" if the jury was not presented with evidence of mitigating circumstances. 782 So.2d at 361-62. However, contrary to Hojan's claims, there is no evidence that the trial court gave the jury's recommendation great weight in this case. Instead, the State specifically informed the trial court on the record that it could not give the jury's recommendation great weight, and the sentencing order does not state that the trial court gave the recommendation great weight. Finally, the trial court told the jury in the penalty-phase instructions that it would give the jury's recommendation "due consideration," not "great weight." Because there is no evidence in the record that the trial court gave the jury's recommendation "great weight," as was prohibited in Muhammad, we deny this claim.
*1216 In Hojan's third claim, he argues that the trial court should have required the presentation of additional mitigation evidence. Hojan alleges that the court should have used its contempt power to compel Hojan's mother to testify to mitigation. In Muhammad, 782 So.2d 343, we stated that "the trial court has the discretion to call persons with mitigating evidence as its own witnesses." Id. at 364. We have also stated, however, that a trial court's discretion to call additional mitigation witnesses "is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." Ocha v. State, 826 So.2d 956, 963 (Fla.2002) (internal quotation marks omitted) (quoting Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000)).
It was reasonable in this case for the trial court not to force Hojan's mother to testify when her son had expressly asked her not to testify. Accordingly, we deny this claim. We also deny this claim because Hojan has not established what evidence his mother could have provided if she had testified. Accordingly, we cannot conclude that the failure of Hojan's mother to testify prejudiced Hojan. We also note that the trial court carefully considered the mitigation evidence present in the record and ordered and reviewed the PSI. Finally, the trial court appointed a special public defender to research and present mitigation to the court. These facts all indicate that the trial court properly conducted its review of mitigation in this case. Hojan has not established what additional mitigation could have been presented; he has not explained how any additional mitigation would alter the balance of aggravators and mitigators in this heavily aggravated case; and he has not established that he is entitled to a new penalty phase even if such mitigation exists because Hojan affirmatively waived his right to present mitigation and actively inhibited the trial court's ability to gather mitigating evidence. Accordingly, we deny relief on this claim.
In Hojan's fourth subclaim, he argues that specially appointed counsel, Hilliard Moldof, and the psychologist Moldof retained, Dr. Michael Brannon, both did an inadequate job in obtaining and presenting mitigation evidence to the trial court. In this case, in light of Hojan's refusal to present mitigating evidence, the trial court appointed special counsel to investigate and present mitigating evidence to assist the trial court in sentencing Hojan. This Court has held that "a defendant [who waived presentation of mitigation evidence] has no basis for claiming that special counsel's presentation of mitigation evidence was ineffective." Grim v. State, 971 So.2d 85, 102 (Fla.2007) (citing Muhammad, 782 So.2d at 364 n. 15); see also Muhammad, 782 So.2d at 364 n. 15 (stating that defendant who "knowingly and intelligent[ly] waived the presentation of mitigating evidence ... [is] barred from subsequently claiming that [special] counsel's performance was ineffective in the presentation of mitigating evidence"). Accordingly, Hojan is not entitled to relief on this claim.
In Hojan's final claim under this issue, he argues that the trial court did not consider the PSI report as it was required to do. However, the sentencing order specifically states that a PSI was ordered, and it notes results of the presentence investigation in its consideration of mitigation. See Sentencing Order at 2 (noting PSI was ordered); Sentencing Order at 12 (noting *1217 information contained in PSI while considering mitigation evidence). Thus, there is evidence in the record that the trial court considered the contents of the PSI, contrary to Hojan's claims on appeal. Accordingly, this claim does not entitle Hojan to relief.
In summary: (1) Hojan knowingly, intelligently, and voluntarily waived his right to mitigation, and thus Koon was satisfied; (2) there is no evidence in the record that the trial court gave the jury's recommendation "great weight," as was prohibited in Muhammad; (3) it was reasonable for the trial court not to force Hojan's mother to testify when her son had expressly asked her not to testify; (4) Hojan is barred from claiming that Moldof's performance was ineffective in the presentation of mitigating evidence because Hojan waived presentation of mitigation evidence; and (5) there is evidence in the record that the trial court considered the contents of the PSI. Accordingly, we deny all five of Hojan's subclaims in this issue.

Sufficiency of the Evidence
Hojan has not challenged the sufficiency of the evidence supporting his convictions. Nonetheless, this Court independently reviews the entire record to determine whether sufficient evidence exists to support Hojan's murder convictions. See Fla. R.App. P. 9.142(a)(6); see also Jones v. State, 963 So.2d 180 (Fla.2007). "Generally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence." Reynolds v. State, 934 So.2d 1128, 1145 (Fla. 2006) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)). "If, after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Id. at 1145.
We conclude that the evidence was sufficient in this case. Nunn identified Hojan as the shooter in a photo lineup at the hospital and also in court. Bolt cutters were found in the back seat of Hojan's truck, and a forensic expert testified at trial that those same bolt cutters had cut two of the locks at the Waffle House. Hojan confessed to murdering the victims and shooting Nunn, and in those confessions, he demonstrated an in-depth knowledge of the crime and the crime scene. Other evidence also linked Hojan to the crime, including a bag of change and money orders found in Hojan's parents' house and testimony that the bullet casings and some of the bullets fired at the victims came from a gun linked to Hojan. Based on this accumulation of evidence, there was competent, substantial evidence supporting the jury's verdicts. Accordingly, we conclude that sufficient evidence supports Hojan's murder convictions.

Proportionality
"In conducting its proportionality review, this Court must compare the totality of the circumstances in a particular case with other capital cases to determine whether death is warranted in the instant case." Rimmer v. State, 825 So.2d 304, 331 (Fla.2002) (citing Bates v. State, 750 So.2d 6 (Fla.1999)). Absent some demonstrated error, this Court "accept[s] the trial court's findings on the aggravating and mitigating circumstances and consider[s] the totality of the circumstances of the case in comparing it to other capital cases." Rodgers v. State, 948 So.2d 655, 670 (Fla.2006).
We conclude that Hojan's death sentence is proportional. The trial court *1218 found that six aggravators applied in this case: (1) Hojan committed a prior capital felony-the contemporaneous murders and attempted murder, Sentencing Order at 3; (2) Hojan committed the murders in the course of an armed kidnapping, id. at 3-4; (3) the murders were committed to avoid arrest, id. at 4; (4) the murders were committed for financial gain, id. at 5; (5) the murders were HAC, id. at 6-8; and (6) the murders were CCP, id. at 8. One statutory mitigator applied, that Hojan had no significant prior history of criminal activity, but it was undercut by the contemporaneous crimes. Id. at 11-12. The two nonstatutory mitigators found were: (1) Hojan was a good son, parent, and provider, id. at 15; and (2) he showed good behavior while incarcerated and during the proceedings, id. at 15. The trial court gave each aggravator "great weight" individually and gave each mitigator "little weight" individually.
This Court has found to be proportional death sentences that were similar in terms of aggravators versus mitigators, as well as sentences that involved fewer aggravators and more mitigators. In Ibar v. State, 938 So.2d 451, 458 (Fla.2006), two individuals beat one victim for over twenty minutes and then murdered all three victims by shooting them in the backs of their heads and in their backs. The trial court found five aggravating factors:
(1) Ibar was previously convicted of another felony involving the use or threat of violence to the person; (2) the capital felony was committed while Ibar was engaged in the commission of a robbery or burglary; (3) the capital felony was committed for the purposes of avoiding or preventing lawful arrest; (4) the capital felony was especially heinous, atrocious, or cruel; and (5) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
Id. The trial court also found two statutory mitigating factors (Ibar had no significant prior criminal history and his age of twenty-two) and nine nonstatutory mitigating factors. Id. at 459.[5] We held that Ibar's death sentence was proportional. Hojan's death sentence is similarly aggravated when compared to Ibar's, but Hojan's sentence involved less mitigation. Thus, Ibar demonstrates that Hojan's death sentence is proportional.
Similarly, in Ocha, this Court held that a death sentence resulting from a strangulation murder was proportional. 826 So.2d at 965-66. Ocha involved the prior violent felony aggravator (from a prior robbery and attempted murder) and the HAC aggravator, weighed against fifteen nonstatutory mitigators stemming from Ocha's background. Id. at 960. Ocha also involved a waiver of the defendant's right to *1219 present mitigating evidence. Id. at 961. This Court not only concluded that Ocha's death sentence was proportional, it stated that "[c]learly, this case presents a murder which is among the most aggravated and least mitigated reviewed by this Court." Id. at 966. Hojan's sentence is more aggravated and less mitigated than Ocha's death sentence, and thus Ocha also demonstrates that Hojan's death sentence is proportional. Accordingly, based on a comparison of Hojan's death sentence to other similar death sentences, we conclude that Hojan's death sentence is proportional.[6]

CONCLUSION
For the forgoing reasons, we deny relief on all of Hojan's asserted claims, conclude that sufficient evidence exists to support Hojan's death sentence, find Hojan's death sentence to be proportional, and thus affirm Hojan's convictions and death sentence.
It is so ordered.
WELLS, LEWIS, CANADY, and POLSTON, JJ., concur.
PARIENTE, J., concurs in result only with an opinion, in which QUINCE, C.J., concurs.
LABARGA, J., did not participate.
PARIENTE, J., concurring in result only.
I agree with the majority's decision to affirm Hojan's convictions and death sentences. I concur in result only because of my concerns regarding the majority's treatment of the merits of the excited utterance issue and its harmless error analysis. I thus write to address the issue of whether the victim's responses to police questioning constitute excited utterances and emphasize that the harmless error test is not one based on whether there is "overwhelming" evidence.
The objectionable statements were the victim's responses to leading questions by police during an interrogation. Although the majority states that we have "previously found statements given in question-and-answer exchanges by officers under similarly stressful statements to be excited utterances," citing to Henyard v. State, 689 So.2d 239 (Fla.1996), Henyard involved a very different set of circumstances where there was no indication that there was an interrogation as here:
When the officer arrived, he found Ms. Lewis, who was hysterical but coherent. At trial, the officer was permitted to recount statements Ms. Lewis made to him on the front porch immediately after his arrival. The police officer testified that Ms. Lewis told him she had been raped and shot, identified her assailants as two young black males who fit the description of Henyard and Smalls, and said they had taken her children. Given these circumstances, we find that Ms. Lewis was still experiencing the trauma of the events she had just survived when she spoke to the officer and her statements were properly admitted under the excited utterance exception to the hearsay rule.
Id. at 251.
As the district courts of appeal have observed, "[s]tatements made in response *1220 to police questioning are, by definition, not excited utterances." Strong v. State, 947 So.2d 552, 556-57 (Fla. 3d DCA 2006); see also J.A.S. v. State, 920 So.2d 759, 763 (Fla. 2d DCA 2006); Blandenburg v. State, 890 So.2d 267, 272 (Fla. 1st DCA 2004). That is because for the most part answers to an interrogation require reflection. Here, the transcript reflects that Officer Donnelly conducted an interrogation while the victim was in an emergency vehicle after being shot. Certainly the victim would have been under the stress of having been shot, but the responses at issue were elicited during a series of questions concerning the identity and role of the participants in the crime, and the responses were one-word responses consisting of "Yeah," "Uh-huh," and "the Mexican."
I concur with the result reached by the majority, however, because I agree with the bottom line that the admission of this testimony was harmless error beyond a reasonable doubt. Yet, it is always helpful to remember that the harmless error test is not one of "overwhelming" evidence:
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. This rather truncated summary is not comprehensive but it does serve to warn of the more common errors which must be avoided.
DiGuilio, 491 So.2d at 1139.
In this case, when considering the brief reference to "the Mexican" as the shooter, compared with the other admissible and essentially identical testimony about the victim's identification of the defendant as the shooter, together with the defendant's own confession, it is clear that the error in this case was harmless beyond a reasonable doubt because there is no reasonable possibility that the admission of this evidence affected the jury's verdict as to Hojan's guilt.
QUINCE, C.J., concurs.
NOTES
[1] Hojan was also sentenced to consecutive life sentences on all other counts except for the attempted felony murder of Nunn, upon which sentence was withheld because Hojan was sentenced on the attempted premeditated murder count.
[2] We deny Hojan's claims asserting errors under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Hojan's case also involved convictions for multiple contemporaneous crimes. This Court has held that such factsfound unanimously by a jurysatisfy the requirements of Ring. See, e.g.; Rodgers v. State, 948 So.2d 655, 673 (Fla.2006); Smith v. State, 866 So.2d 51, 68 (Fla.2004); Jones v. State, 855 So.2d 611, 619 (Fla.2003). Accordingly, we deny Hojan's Ring claims.

Further, Hojan's Apprendi claims have also been previously rejected by this Court. First, this Court has rejected claims that the State is required to provide notice of the aggravating factors it intends to prove in the penalty phase. See, e.g., Kormondy v. State, 845 So.2d 41, 54 (Fla.2003); Lynch v. State, 841 So.2d 362, 378 (Fla.2003). Second, this Court has also rejected the claim that the jury must report its findings. See, e.g., Walker v. State, 957 So.2d 560, 569 (Fla.2007); Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003). Third, this Court has rejected the claim that a nonunanimous jury sentencing recommendation is unconstitutional. See, e.g., Parker v. State, 904 So.2d 370, 383 (Fla.2005); Hodges v. State, 885 So.2d 338, 359 n. 9 (Fla.2004). Fourth, this Court has rejected burden-shifting claims that argue Florida's capital sentencing statute or jury instructions unconstitutionally place the burden on the defendant to prove that sufficient mitigating circumstances exist to outweigh the aggravators. See, e.g., Griffin v. State, 866 So.2d 1, 14 (Fla.2003); Sweet v. Moore, 822 So.2d 1269, 1274 (Fla.2002). Finally, this Court has also rejected claims that telling a jury that it only recommends a sentence of life or death, while the final decision on the sentence is up to the judge unconstitutionally dilutes the jury's responsibility. See, e.g., Sochor v. State, 619 So.2d 285, 291 (Fla. 1993). Accordingly, we deny Hojan's Apprendi claims as well.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The trial court stated in its order that Anton read Hojan his Miranda rights in their entirety on the tape recording. However, as Hojan points out, the transcript of the tape in the record indicates that Hojan was not read his rights in full on the tape recording. We find that this apparent misstatement by the trial court does not undermine the remaining evidence supporting the trial court's rejection of the motion to suppress.
[5] The nine nonstatutory mitigators were:

(1) Ibar was a good and respectful young adult; was a good, obedient and caring child; committed good deeds and had good characteristics; had a loving relationship with his mother; is a caring person (considered collectively and given medium weight); (2) Ibar is a good worker (given minimal weight); (3) Ibar can be rehabilitated in prison, is unlikely to endanger other prison inmates, and would make a peaceful adjustment to prison life (given very little weight); (4) Ibar was a good friend (given minimal weight); (5) Ibar exhibited good courtroom behavior and a good attitude (given minimal weight); (6) Ibar is religious (given minimal weight); (7) Ibar's family and friends care for and love him and he married his fiancé while in jail (given minimal weight); (8) Ibar comes from a good family (given minimal weight); and (9) Ibar expressed remorse (given minimal weight).
Id. at 459, 86 S.Ct. 1602.
[6] To the extent that Hojan raises various other issues in the portion of his reply brief addressing proportionality, we deny relief on those issues because Hojan raised and we addressed them elsewhere in his appeal, and they do not alter the result of the proportionality analysis.