POLSTON, C.J.,
concurring in part and dissenting in part.
I agree with the majority’s decision to deny Simmons’ habeas petition and to affirm the denial of his guilt phase claims. However, I disagree with the decision to remand for a new penalty phase.
During the evidentiary hearing, Mr. Pfister, Simmons’ death-qualified counsel who was responsible for the penalty phase,[19] emphasized that Simmons ulti *516 mately made the decisions about what mitigation evidence to present and that Simmons chose not to listen to or take Mr. Pfister’s advice. Although it is not generally wise to disregard one’s experienced and death-qualified counsel, “the defendant has the right to choose what evidence, if any, the defense will present during the penalty phase.” See Boyd v. State, 910 So.2d 167, 189-90 (Fla.2005).
Simmons, with the support of his family, significantly limited the mitigation evidence that was presented during the penalty phase against Mr. Pfister’s advice. Specifically, as the postconviction court accurately explained, “the Defendant and the family did not want any testimony that reflected badly on the family or the Defendant. Thus, the Defendant and his family excluded the possibility of testimony about abuse or the Defendant’s mental limitations.” For example, in a memo to his file dated December 11, 2008, Mr. Pfister explained the following:
I thought we had more mitigating circumstances that we could have presented. I believe Dr. Elizabeth McMahon could have testified in front of the jury in Phase Two and presented mental health mitigation but that was rejected by Janice Orr and Eric Simmons. I mentioned it to Eric Simmons’ sister. She did testify that she did not want that testimony put on either. I believe Dr. McMahon, from speaking with her, could have testified about Eric’s IQ and that he repeated a grade. What Dr. McMahon testified to in the Spencer hearing did not include any testimony about his IQ. She told me that he was not retarded or incompetent but he was in the 70’s or low 80’s for IQ. Eric Simmons had some sensitivity and the family has some sensitivity about bringing that out and Janice Orr did not want to bring that up.
Additionally, Mr. Pfister testified during the evidentiary hearing that he believed Simmons’ father could have been a good witness. Further, although Mr. Pfister testified that they knew Simmons drank, and although Dr. McMahon testified that Simmons told her that he used marijuana, Simmons and his family did not want to present any negative testimony. For the same reason, a tactical decision was made not to present Simmons’ school records and the information collected from his forensic assessment, records Mr. Pfister and Ms. Orr reviewed after collecting them from Simmons’ prior counsel.
Essentially, as the trial court ably explained, we are considering an ineffectiveness of counsel claim “raised by a Defendant who repeatedly chose to ignore the advice of his qualified lead-counsel and chose — with his family’s support — to limit mitigation evidence because it would cast him and/or his family in a negative light.” However, capital defendants have the right to limit the mitigation evidence presented during the penalty phase. See Boyd, 910 So.2d at 189-90. In fact, this Court has explained that “[cjompetent defendants who are represented by counsel maintain ... the right to either waive presentation *517 of mitigation evidence or to choose what mitigation evidence is introduced by counsel.” Hojan v. State, 3 So.3d 1204, 1211 (Fla.2009).
Accordingly, because Simmons exercised his right to limit the mitigation evidence presented, I would hold that counsel was not ineffective. I would affirm the denial of postconviction relief.
CANADY, J., concurs.

. Simmons was originally represented by two attorneys from the public defender’s office. But Simmons and his family were dissatisfied with them and decided to retain Ms. Orr as trial counsel. The trial court at first denied Simmons’ request to substitute Ms. *516 Orr for the public defenders because she was not qualified pursuant to Florida Rule of Criminal Procedure 3.112. However, Simmons and his family ultimately succeeded in retaining Ms. Orr by also hiring Mr. Pfister, who was qualified pursuant to rule 3.112. And during a hearing on July 3, 2003, the trial court questioned Simmons again regarding his choice of counsel, and Simmons stated under oath that he was satisfied with the division of labor between Ms. Orr and Mr. Pfister and that they had done everything Simmons had asked them to do.