# Supreme Court of Florida

_____

No. SC18-2149
_____

**GERHARD HOJAN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

December 3, 2020

PER CURIAM.

Gerhard Hojan appeals two sentences of death imposed during a

resentencing that this Court ordered as a result of *Hurst*[1] error. We have

jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm.

## BACKGROUND

The evidence presented at Hojan's 2003 trial established that, at

approximately 4 a.m. on the morning of March 11, 2002, Hojan and Jimmy Mickel

entered a Waffle House where the victims, Barbara Nunn, Christina De La Rosa,

_____

1. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020).

and Willy Absolu, worked. *Hojan v. State* (*Hojan I*), 3 So. 3d 1204, 1207 (Fla. 2009). The victims recognized and knew Hojan and Mickel because they had eaten at that Waffle House on prior occasions, Mickel had previously worked there, and Mickel and Hojan had previously admitted one of the victims to a club where they worked. *Id.* After eating breakfast, Mickel retrieved a pair of bolt cutters and went to the employee section of the restaurant, and Hojan ordered Nunn, De La Rosa, and Absolu into a freezer at gunpoint, shutting them inside. *Id.* at 1207-08. While Mickel cut the locks to the cash stores, Hojan returned to the freezer three times. *Id.* at 1208. After demanding the victims give him their cell phones and money, Hojan returned for a third and final time and ordered the victims to turn around and kneel, shooting each of them. *Id.* Nunn survived and identified Mickel and Hojan as being involved. Hojan was soon apprehended and subsequently confessed. *Id.*

Hojan's jury convicted him of two counts of first-degree murder, one count of attempted first-degree premeditated murder, three counts of armed kidnapping, and two counts of armed robbery. *Id.*[2] At the penalty phase, Hojan waived his right to present mitigation evidence. *Id.* at 1210. The jury recommended that

---

2. Hojan was also convicted of one count of attempted first-degree felony murder for the shooting of Nunn. However he was not sentenced for this count because he was sentenced for the attempted premeditated murder of the same victim. *Hojan I*, 3 So. 3d at 1208 n.1.

Hojan be sentenced to death by a vote of nine to three, and the trial court followed that recommendation and imposed two death sentences for the murders of Absolu and De La Rosa. *Id.* at 1208. This Court affirmed Hojan's convictions and sentences on direct appeal, *id.* at 1219, and the United States Supreme Court denied certiorari. *Hojan v. Florida*, 558 U.S. 1052 (2009).

In 2010, Hojan filed his initial motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851 seeking to vacate his convictions and sentences of death. *Hojan v. State* (*Hojan II*), 212 So. 3d 982, 988 (Fla. 2017). The circuit court summarily denied all of Hojan's claims, and Hojan appealed to this Court and petitioned for a writ of habeas corpus. *Id.* at 986, 988. This Court affirmed the circuit court's summary denial of Hojan's rule 3.851 motion, denied the accompanying habeas petition, but vacated Hojan's death sentences due to *Hurst* error and remanded for a new penalty phase. *Id.* at 1001.

At the conclusion of his new penalty-phase trial, the resentencing jury voted twelve to zero to recommend that Hojan be sentenced to death for both of his first-degree murder convictions. As to count one, the first-degree murder of Absolu, the jury found that the State proved the following four aggravators beyond a reasonable doubt: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to another person; (2) the first-degree murder was committed while the defendant was engaged, or was an

accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, the crime of armed kidnapping; (3) the first-degree murder was committed for the purpose of avoiding or preventing a lawful arrest; and (4) the first-degree murder was especially heinous, atrocious, or cruel.[3] As to count two, the first-degree murder of De La Rosa, the jury found that the State proved the following five aggravators beyond a reasonable doubt: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to another person; (2) the first-degree murder was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, the crime of armed kidnapping; (3) the first-degree murder was committed for the purpose of avoiding or preventing a lawful arrest; (4) the first-degree murder was especially heinous, atrocious, or cruel; and (5) the first-degree murder was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification.[4]

---

3. The jury found that the State failed to prove beyond a reasonable doubt that the first-degree murder of Absolu was (1) committed for financial gain and (2) committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification.

4. The jury found that the State failed to prove beyond a reasonable doubt that the first-degree murder of De La Rosa was committed for financial gain.

Following the *Spencer*[5] hearing, the trial court found the same statutory aggravators as the jury and assigned each aggravator "great weight." With respect to both counts, the trial court also found thirty nonstatutory mitigating circumstances and assigned each of them little weight: (1) the defendant has no criminal convictions other than the counts in this case; (2) the defendant has had no disciplinary reports filed against him during his incarceration; (3) under the circumstances, the defendant is a good father; (4) before his incarceration, the defendant was a good son; since his incarceration, he has attempted to maintain a positive relationship with his mother; and his father is deceased; (5) the defendant has no history of drug/alcohol abuse; (6) before this incident, the defendant was a good citizen who maintained consistent employment and helped provide for his family; (7) the defendant has a positive influence on friends and family; (8) the defendant has maintained positive, ongoing relationships during his incarceration; (9) the defendant has been respectful in court; (10) defendant was physically and emotionally abused by his father; (11) the defendant struggled to please his father and was rejected by his father throughout his childhood; (12) the defendant was displaced throughout his childhood; his parents sent him to reside with friends and family members during his childhood; (13) the defendant at age fifteen was sent to

_____

5. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

live in Miami while his parents remained in Jamaica, and he had limited adult supervision during this time; (14) the defendant did not complete high school because he suffered from a foot injury and was unable to drive himself to school; (15) the defendant's mother was subservient to his father and did not serve as a protector for him during his formative years; (16) the defendant had no positive father figure; (17) the defendant was ridiculed throughout his childhood about his weight by his father; (18) the defendant had a desire to please his mother and his father; (19) the defendant was influenced by others; (20) the defendant has a hobby; he was a passionate kite flyer; (21) the defendant has demonstrated he is able to continue to build positive relationships while incarcerated; (22) the defendant was told by his codefendant that "we can't leave any witnesses"; (23) the defendant has demonstrated remorse, as reflected in his recorded statement made within twenty-four hours of the incident, wherein he expressed he "wished he could take it back"; (24) the defendant has expressed remorse for his actions to his family and has expressed remorse for the victims' families; (25) the defendant's son suffers from autism and Asperger's syndrome; the two of them have a close relationship and his son depends upon him for advice; (26) the defendant is loved by all his family members and friends; (27) the defendant obtained his G.E.D. while incarcerated; (28) the defendant cooperated with police by voluntarily giving a statement and consenting to a search of his vehicle; (29) the

defendant was diagnosed with and treated for bladder cancer; he is currently under treatment by Dr. Gupta; and (30) the existence of any other factors in the defendant's character, background, or life, or the circumstances of the offense that would mitigate against the imposition of the death penalty.[6]

Ultimately, the trial court followed the resentencing jury's recommendation and sentenced Hojan to death as to both counts. In its sentencing order, the trial court considered and weighed the aggravating and mitigating circumstances and found "the aggravating factors in this case far outweigh the mitigating circumstances" with respect to both murders. Hojan now appeals his sentences of death, arguing (1) that the trial court abused its discretion by limiting the scope of defense counsel's questioning during voir dire and (2) that his death sentences are disproportionate.

## ANALYSIS

### Voir Dire

**I. Defense Counsel's Hypothetical.**

Hojan first argues that the trial court improperly limited the scope of voir dire by restricting his use of a hypothetical question. We review the trial court's

---

6. For both counts, the jury also placed what appears to be a "1" in the "Yes" option of the verdict form, indicating that "a mitigating circumstance or circumstances was or were established by the greater weight of the evidence."

ruling for abuse of discretion. *Calloway v. State*, 210 So. 3d 1160, 1178 (Fla. 2017).

During voir dire, defense counsel posed the following question to a prospective juror: "A guy kills somebody. Not self-defense. Not heat of passion. Not duress. Meant to do it. Premeditated. Killed an innocent victim. What are your feelings about the death penalty, only appropriate penalty for a guilty murderer of that innocent victim?" After the State lodged an objection and the trial court directed defense counsel to "[r]ephrase it," an extended sidebar took place wherein defense counsel argued that he should be allowed to question the prospective jurors using his hypothetical concerning premeditation. The trial court again sustained the State's objection but granted defense counsel's request to "make a record" outside of the presence of the jury. After several additional exchanges with the trial court, defense counsel stated that the ultimate question he wanted to ask the prospective jurors as a result of his proposed hypothetical was, "[D]o you believe that in every situation, where a defendant is, has been found guilty or you would find him guilty of premeditated murder that death is the only appropriate penalty[?]" Upon receiving this explanation from defense counsel, the trial court stated, "You know how we get to that question? You ask it."

Hojan now argues that the trial court abused its discretion by not allowing defense counsel's proposed hypothetical. We disagree.

We have explained that "the purpose of conducting voir dire is to secure an impartial jury" and that a trial court's ruling with respect to voir dire "will only be reversed where a defendant demonstrates the partiality of the jury or an abuse of discretion by the trial court." *San Martin v. State*, 705 So. 2d 1337, 1344 (Fla. 1997). *See also Mendez v. State*, 898 So. 2d 1141, 1143 (Fla. 5th DCA 2005) (acknowledging that while a trial court has "considerable discretion in determining the extent of counsel's examination of prospective jurors," a trial court nonetheless abuses its discretion "when it unreasonably limits counsel's ability to conduct a meaningful voir dire" (quoting *Williams v. State*, 424 So. 2d 148, 149 (Fla. 5th DCA 1982)); *Barker v. Randolph*, 239 So. 2d 110, 112 (Fla. 1st DCA 1970) (explaining that the trial judge has "wide latitude in the exercise of his discretion with respect to the qualification of jurors" and that "[i]n exercising that discretion, he may reasonably control voir dire examination in the interest of orderliness and in the dispatch of trials").

Hojan does not allege that his jury was partial, and he has not demonstrated that the trial court abused its discretion by prohibiting adequate questioning on the topic that was the subject of defense counsel's proposed hypothetical. To the contrary, the record shows that the trial court permitted an alternate inquiry by defense counsel that was sufficient to allow counsel to assess any juror bias that would affect the jurors' ability to impartially decide the case based upon the

- 9 -

evidence presented at trial and the law. Defense counsel conducted a meaningful voir dire during which he thoroughly explored the prospective jurors' feelings regarding the death penalty, mitigation, and whether they could consider life. For example, defense counsel asked the prospective jurors if they could think of any specific instances concerning someone already convicted of first-degree murder where they would automatically vote for death, if they would automatically give the death penalty "in a case that involved a robbery," if they could consider mitigation and keep an open mind, if hearing victim impact evidence would affect their weighing process, and repeatedly explained the weighing process, emphasizing that the death penalty is never required. Accordingly, we find no abuse of discretion. *See Franqui v. State*, 699 So. 2d 1312, 1323 (Fla. 1997) (concluding that the trial court did not abuse its discretion in directing defense counsel to ask a question concerning the defendant's young age as a factor in deciding whether to impose the death penalty "generically" where the record reflected that "the trial court left defense counsel with plenty of latitude to discuss mitigating circumstances with the jurors in the context of the legal instructions that would be given by the court"); *Farina v. State*, 679 So. 2d 1151, 1154 (Fla. 1996) (holding that the trial court did not improperly restrict the defendant's voir dire and explaining that while "defense counsel was restricted from exploring jurors' attitudes on every potential mitigator, the record shows that the defense, the State,

and the trial court either asked or instructed prospective jurors on numerous occasions whether they could be fair to [the defendant] and his brother"), *receded from on other grounds by Franqui*, 699 So. 2d at 1320.

Moreover, even if we were to agree with Hojan that the trial court more broadly ruled that *all* hypothetical voir dire questions are improper, Hojan still would not be entitled to relief because any error was harmless beyond a reasonable doubt. *Cf. Gore v. State*, 475 So. 2d 1205, 1207 (Fla. 1985). In *Gore*, this Court held that the trial court "should have allowed [defense counsel] to propound questions to the jury as to their bias or prejudice in recommending a life sentence," but that the error was harmless beyond a reasonable doubt, explaining:

> The jury was thoroughly questioned in regard to their attitudes toward the death penalty and whether they felt it should be automatically imposed or whether they would follow the court's instructions and make sure the circumstances were proved to support it before they would consider it. Gore has not shown that his jury was made up of one or more persons unalterably in favor of the death penalty or that any of the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.

*Id.* at 1207-08.

The reasoning from *Gore* applies here. Despite not being able to ask the proposed hypothetical, as we have explained above, the record demonstrates that Hojan's defense counsel was permitted to explore the prospective jurors' attitudes toward the death penalty. Moreover, Hojan has not alleged, let alone shown, that

- 11 -

his jury was made up of one or more jurors unalterably in favor of the death penalty or that any juror's views would prevent or substantially impair the performance of the juror's duties in accordance with the jury's instructions and oath. Accordingly, even assuming the trial court erred, any error was harmless. *See id.* at 1207-08.

## II.     The Trial Court's Other Rulings With Respect to Voir Dire.

Hojan further contends that the trial court improperly restricted voir dire questioning in three additional respects, namely by (1) ruling it would not instruct the jury on premeditation even though defense counsel explained that a definition of heightened premeditation was required for the CCP aggravator, (2) prohibiting defense counsel from asking the prospective jurors if they understood that the law is satisfied with a life without parole sentence, and (3) rebuking defense counsel when he attempted to ask if life imprisonment is a significant enough penalty for first-degree murder. Hojan's assertions are without merit, as they are not an accurate portrayal of the record.

First, although the trial court initially stated it would not instruct the jury on premeditation, the court allowed defense counsel to read the instruction and alternatively offered to instruct the jury on first-degree premeditated murder if defense counsel and Hojan desired. The trial court also gave the standard jury instruction for the CCP aggravator.

- 12 -

Second, at a hearing on a motion in limine in which the State sought to prevent the defense from arguing that "the law favors a life sentence," the trial court granted the State's motion but left open the issue of whether the defense could inform the jurors that "the law is satisfied with a life sentence" because it "depends upon the phraseology and the way in which [defense counsel] put a question to the jury."[7]  Moreover, defense counsel told the prospective jurors that the death penalty was never required, telling them at one point that "even if the aggravating factors outweigh the mitigating circumstances, find no mitigating circumstances, it is permissible to sentence him to life . . . [b]ecause each and every one of you are an individual.  Each of you have your own moral compassion."  The trial court also gave the standard jury instruction for mitigating circumstances and the weighing process, instructing the jurors that, regardless of the results of each juror's individual weighing process, "the law neither compels nor requires you to determine that the defendant should be sentenced to death."

Third, the trial court did sustain the State's objection to defense counsel's asking prospective jurors if they thought "life in prison is a significant *enough*

---

7.  In his brief, Hojan does not identify where in the record the trial court prohibited defense counsel from asking the prospective jurors whether they understood that the law is satisfied with a life without parole sentence.  Our review of the record shows that during voir dire, the State objected to defense counsel's telling the prospective jurors that "[t]he law is satisfied with a life sentence," but the transcript does not show that the trial court made a ruling as to that objection.

penalty," (emphasis added), but allowed counsel to ask the jurors if they thought "life in prison is a significant penalty." The record demonstrates that defense counsel asked the prospective jurors this question and engaged with them on their views.

Moreover, with respect to all three of Hojan's additional allegations, our review of the record shows that Hojan challenged three jurors for cause, successfully removing one, and peremptorily struck eight jurors. This, in addition to defense counsel's thorough exploration of the prospective jurors' feelings regarding the death penalty and whether they could consider life, refutes Hojan's assertion that the trial court abused its discretion. *See Vining v. State*, 637 So. 2d 921, 926 (Fla. 1994) (holding that the trial court did not abuse its discretion in limiting the scope of questioning during voir dire where "defense counsel was able to explore the potential jurors' understanding of the two-part procedure involved and their ability to follow the law as instructed by the judge in the penalty phase" and where such questioning "was comprehensive enough to permit defense counsel to strike several prospective jurors for cause").

Accordingly, we deny relief as to these additional claims. *See Franqui*, 699 So. 2d at 1322-23; *Farina*, 679 So. 2d at 1154; *Vining*, 637 So. 2d at 926.

## Proportionality

Hojan also argues that his death sentences are disproportionate. However, after oral argument in this case, we receded from the judge-made requirement to review the comparative proportionality of death sentences as contrary to the conformity clause of article I, section 17 of the Florida Constitution. *See Lawrence v. State*, 45 Fla. L. Weekly S277, S279 (Fla. Oct. 29, 2020). Accordingly, we do not review the comparative proportionality of Hojan's death sentences.[8]

## CONCLUSION

For the foregoing reasons, we affirm Hojan's sentences of death.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
LABARGA, J., concurs in result with an opinion.
GROSSHANS, J., did not participate.

---

8. Although we recognize the de novo nature of resentencing, we note that we previously held Hojan's death sentences to be proportional. *Hojan I*, 3 So. 3d at 1219. We also note that in addition to his proportionality arguments, Hojan contends that the trial court erred in assigning little weight to the thirty mitigating circumstances found in his case. However, Hojan fails to advance any argument as to why we should conclude that the trial court erred in weighing mitigation and has therefore waived the claim. *See Patrick v. State*, 104 So. 3d 1046, 1066 (Fla. 2012) (concluding the appellant's claim regarding the weight assigned to mitigation was "without merit" because the appellant did not "allege[] with specificity which factor should have been given more weight, or the grounds for his assertion"). Moreover, even if Hojan had properly presented this claim, we have repeatedly held that the weight assigned to mitigation is "within the sole discretion of the trial court." *Id.*

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

In light of this Court's decision in *Lawrence v. State*, 45 Fla. L. Weekly S277 (Fla. Oct. 29, 2020) (receding from proportionality review requirement in death penalty direct appeal cases), and for the reasons expressed in my dissent in *Lawrence*, *id.* at S279-82, I can only concur in the result.

An Appeal from the Circuit Court in and for Broward County,
    Paul L. Backman, Judge - Case No 062002CF005900B88810

George Edward Reres of Rereslaw, LLC, Fort Lauderdale, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida,

    for Appellee