# Supreme Court of Florida

_____

No. SC13-5
_____

**GERHARD HOJAN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC13-2422
_____

**GERHARD HOJAN,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[January 31, 2017]

PER CURIAM.

Gerhard Hojan was convicted of two counts of first-degree murder, one count of attempted first-degree premeditated murder, one count of attempted first-degree felony murder, three counts of armed kidnapping, and two counts of armed

robbery. Hojan was sentenced to death. This Court affirmed his convictions and sentences on direct appeal. Hojan v. State, 3 So. 3d 1204 (Fla.), cert. denied, Hojan v. Florida, 558 U.S. 1052 (2009).

Hojan now appeals the denial of his initial motion for postconviction relief and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the postconviction court's denial of relief but grant Hojan a new penalty phase based on the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016), and our decision in Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016).[1]

**FACTS**

This Court summarized the relevant facts on direct appeal as follows:

Gerhard Hojan was charged with armed robbery, armed kidnapping, attempted murder, and murder arising out of the events of Monday, March 11, 2002. The evidence presented at Hojan's trial established that at approximately 4 a.m., Hojan and Jimmy Mickel entered the Waffle House where the victims, Barbara Nunn, Christina De La Rosa, and Willy Absolu worked. Hojan and Mickel had eaten at that Waffle House on several prior occasions, and the victims recognized and knew Hojan and Mickel. Mickel had also previously worked at that Waffle House. Additionally, Nunn knew Mickel and Hojan from attending a club where Mickel and Hojan worked and

---

1. We previously issued a decision in this case on September 3, 2015. See Hojan v. State, 180 So. 3d 964 (Fla.), reh'g denied, (Dec. 18, 2015). After the United States Supreme Court released Hurst v. Florida, we granted Hojan's motion to recall mandate, re-opened his case numbers SC13-5 and SC13-2422, and permitted supplemental briefing. We withdraw our previous opinion, and replace it with this opinion.

where they had previously admitted Nunn for free.

After eating breakfast, Mickel exited the Waffle House. He returned with a pair of bolt cutters and went toward the employee section of the restaurant. Hojan produced a handgun and ordered Nunn, De La Rosa, and Absolu into the back of the kitchen, where he directed them into a small freezer and shut them inside. While Mickel cut the locks to various cash stores, Hojan returned to the freezer a total of three times. First, Hojan returned and demanded that the victims give him any cell phones they had. Next, he returned and demanded their money. Finally, he returned and ordered the victims to turn around and kneel on the floor. Nunn protested and tried to persuade Hojan not to kill them, but Hojan nevertheless shot each of the victims. . . .

Nunn survived and awoke later with Absolu's legs on top of her body. She crawled out of the freezer and went next door to a gas station. There, with the help of the night attendant, she called 911 and subsequently her mother and sister. . . . Prior to her helicopter flight, Nunn gave law enforcement officers a taped statement, in which she identified Mickel and Hojan as being involved. . . .

Hojan was convicted of two counts of first-degree murder for the death of Absolu and De La Rosa; one count of attempted first-degree premeditated murder as to Nunn; one count of attempted first-degree felony murder as to Nunn; three counts of armed kidnapping; and two counts of armed robbery. State v. Hojan, No. 02-5900CF10B (Fla. 17th Cir. Ct. sentencing order filed Aug. 2, 2005) at 1 (Sentencing Order). The jury recommended death by a vote of nine to three, and the trial court followed that recommendation and imposed two death sentences for the murders of Absolu and De La Rosa. In sentencing Hojan to death, the trial court found six aggravators, one statutory mitigator, and two nonstatutory mitigators. . . .

On appeal, Hojan raises five claims. He argues that (1) the surviving victim's statement to an officer at the scene was not an excited utterance; (2) the trial court improperly treated Hojan's waiver of the opportunity to present mitigating evidence in the penalty phase as a waiver of his opportunity to present motions challenging the death penalty; (3) his confession should have been suppressed; (4) Florida's death penalty statute is unconstitutional; and (5) the trial court committed error under Koon v. Dugger, 619 So. 2d 246 (Fla. 1993), and Muhammad v. State, 782 So. 2d 343 (Fla. 2001). We independently assess the sufficiency of the evidence and the

proportionality of Hojan's sentence. We find no error under Hojan's five asserted claims, find that sufficient evidence exists, and conclude that the death sentence is proportional. Accordingly, we affirm the trial court's order sentencing Hojan to death.

Hojan, 3 So. 3d at 1207-09 (footnote omitted).

On November 19, 2010, Hojan filed a "Motion to Vacate Judgment of Convictions and Sentences with Special Request for Leave to Amend," raising nine claims, which the circuit court treated as Hojan's initial postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.851.[2]

---

2. In his rule 3.851 motion, Hojan raised the following claims: (1) section 119.19, Florida Statutes, and Florida Rule of Criminal Procedure 3.852 are unconstitutional facially and as applied to him (Claim I—amended); (2) the one-year time limit established by rule 3.851 for filing a motion for postconviction relief violates his rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and article I, section 2 of the Florida Constitution (Claim II); (3) trial counsel was allegedly ineffective during pretrial and the guilt phase (consisting of four subclaims) (Claim III); (4) the trial court erred by permitting the State to present Williams rule evidence consisting of testimony of two witnesses attesting that they had seen Hojan in the past few months with a gun similar to the murder weapon (Claim IV), Williams v. State, 110 So. 2d 654 (Fla. 1959); (5) trial counsel was allegedly ineffective for failing to adequately advise Hojan about the risks of waiving mitigation evidence during the penalty phase (Claim V—amended); (6) Rule Regulating the Florida Bar 4-3.5(d)(4) burdens Hojan's exercise of fundamental constitutional rights—including the right to due process (Claim VI); (7) newly discovered evidence is available to show that the forensic science used to convict and sentence Hojan was unreliable and invalid (Claim VII); (8) Florida's lethal injection protocol is both facially unconstitutional and unconstitutional as applied to Hojan's case (Claim VIII—amended); and (9) Florida's death penalty scheme is unconstitutional because it violates the principles of Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002) (Claim IX).

The circuit court entered an order that summarily denied all of Hojan's claims for postconviction relief. This appeal follows. Hojan also petitions this Court for a writ of habeas corpus.[3]

## ANALYSIS

### Standard of Review—Postconviction Motion

We have previously established that there is a presumption that claims for relief sought in a rule 3.851 motion are presumptively entitled to a postconviction evidentiary hearing. However, the circuit court's summary judgment denying a defendant's rule 3.851 motion will be upheld if there is a conclusive showing that defendant is not entitled to relief, or the claim(s) is insufficiently pleaded.

> "A defendant is normally entitled to an evidentiary hearing on a postconviction motion 'unless (1) the motion, files, and records in the case conclusively show that the movant is entitled to no relief, or (2) the motion or particular claim is legally insufficient.' " Valentine v. State, 98 So. 3d 44, 54 (Fla. 2012) (quoting Franqui v. State, 59 So. 3d 82, 95 (Fla. 2011)). An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient

---

3. In the present appeal, Hojan raises the following claims: (1) The circuit court erred in failing to grant an evidentiary hearing on the issue that Hojan's convictions are unreliable; (2) trial counsel provided ineffective assistance for failing to adequately advise Hojan about waiving mitigation evidence during the penalty phase; (3) the circuit court abused its discretion in denying access to records, held by certain state agencies, pertaining to Hojan's case; (4) there is newly discovered evidence establishing that the forensic science used to convict and sentence Hojan was unreliable and invalid; (5) the Bar rule that prohibits his lawyers from interviewing jurors to determine if there was any constitutional error present, unduly burdens his exercise of his rights; and (6) Florida's lethal injection protocol and procedures violate the Eighth Amendment of the United States Constitution.

claim that requires factual determination.  See Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, & 3.993, 772 So. 2d 488, 491 n.2 (Fla. 2000).  "[T]o the extent there is any question as to whether a rule 3.851 movant has made a facially sufficient claim requiring a factual determination, the Court will presume that an evidentiary hearing is required."  Walker v. State, 88 So. 3d 128, 135 (Fla. 2012).  However, merely conclusory allegations are not sufficient—the defendant bears the burden of "establishing a 'prima facie case based on a legally valid claim.' "  Valentine, 98 So. 3d at 54 (quoting Franqui, 59 So. 3d at 96).

"To uphold the trial court's summary denial of claims raised in an initial postconviction motion, the record must conclusively demonstrate that the defendant is not entitled to relief."  Everett v. State, 54 So. 3d 464, 485 (Fla. 2010).  When reviewing the circuit court's summary denial of an initial rule 3.851 motion, we will accept the movant's factual allegations as true and will affirm the ruling only if the filings show that the movant has failed to state a facially sufficient claim, there is no issue of material fact to be determined, the claim should have been brought on direct appeal, or the claim is positively refuted by the record.  See Walker, 88 So. 3d at 135. Finally, "[b]ecause a court's decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review."  Seibert v. State, 64 So. 3d 67, 75 (Fla. 2010) (citing State v. Coney, 845 So. 2d 120, 137 (Fla. 2003) (holding that pure questions of law that are discernable from the record are subject to de novo review)).

Barnes v. State, 124 So. 3d 904, 911 (Fla. 2013).  As we explain below, we affirm the circuit court's summary denial of Hojan's motion for postconviction relief.

**Merits—Postconviction Motion**

Trial Court Error

Hojan raised four subclaims pertaining to alleged trial court error: (1) failure to subject certain analysis of forensic evidence introduced by the State's expert

- 6 -

witness to a Frye[4] hearing; (2) failure to inquire into whether Hojan knowingly, intelligently, and voluntarily waived his Miranda[5] rights; (3) failure to recognize that Hojan was entitled to relief under the Vienna Convention;[6] and (4) failure to disallow the jury selection process, as unorthodox and unconstitutional.

In light of the record before us, we determine that the circuit court found conclusive evidence that Hojan was not entitled to relief based on any of the subclaims under his overall claim of trial court error. Notwithstanding the absence of trial court error, we specifically comment below about Hojan's assertion that the jury selection procedure in his case was unorthodox and unconstitutional.

Frye Hearing

Hojan asserts that he was entitled to an evidentiary hearing to address counsel's ineffectiveness for failing to challenge certain forensic evidence analysis in a Frye hearing. However, the record shows that the circuit court did not err in summarily denying this subclaim as being insufficiently pleaded and lacking merit. Relying on the authority of Ramirez v. State, 810 So. 2d 836 (Fla. 2001), the circuit court rejected as conclusory Hojan's assertion that a 2009 report

---

4. Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

5. Miranda v. Arizona, 384 U.S. 436 (1966).

6. Hojan specifically identifies Article 36(1)(b) of the Vienna Convention on Consular Relations, 596 U.N.T.S. 261 (Dec. 24, 1969) (Vienna Convention).

promulgated by the National Academy of Sciences (NAS), pertaining to forensic science, established that tool mark and bullet rifling evidence did not satisfy the criteria for admissibility under Florida law.

In addition, the circuit court did not err in concluding that Hojan's subclaim was insufficiently pleaded because he never alleged that the 2009 NAS report undermines the reliability of the analyses of forensic evidence in his case.

In Ramirez we explained why the forensic evidence that Hojan challenged is generally admissible in criminal trials:

> The theory underlying tool mark evidence . . . is generally accepted in the scientific community and has long been upheld by courts. Many of the analytical methods that were developed for use with tool marks in general have been applied to knife marks in particular and have similarly been accepted by courts.

Ramirez, 810 So. 2d at 845. Furthermore, the circuit court did not err in summarily denying relief because it is well-established that "the Frye standard is the proper standard for admission of novel scientific expert testimony." Hadden v. State, 690 So. 2d 573, 577 (Fla. 1997) (citing Stokes v. State, 548 So. 2d 188, 194-95 (Fla. 1989)).

Furthermore, the circuit court did not err in summarily denying an evidentiary hearing regarding Hojan's assertion that trial counsel was ineffective for failing to challenge allegedly conclusive testimony given by Carl Haemmerle, the State's expert witness. The circuit court properly ruled that Hojan failed to

specify any information that counsel could have elicited during voir dire that would have warranted Haemmerle's exclusion as an expert. Thus, the circuit court properly concluded that Hojan insufficiently pleaded this sub-issue. See Barnes, 124 So. 3d at 911 (stating merely conclusory statements are insufficient to establish the requirement for a factual determination).

## Miranda Waiver

The circuit court did not err in summarily denying as procedurally barred Hojan's assertion that counsel was ineffective for not challenging during the suppression hearing the legal sufficiency of Hojan's waiver of his rights under Miranda. The circuit court correctly recognized that Hojan raised this issue during his direct appeal, where this Court rejected it as an argument of trial court error. Hojan, 3 So. 3d at 1212 ("After hearing the testimony of several law enforcement officers, the trial court denied Hojan's motion . . . . The trial court found that (1) Detective Anton read Hojan his Miranda rights and asked Hojan if he understood those rights; (2) Hojan replied that he was read them and understood them; and (3) after Hojan affirmed that he had been read Miranda warnings, '[t]he Defendant was still willing to talk with [Anton]' on the tape . . . . Ultimately, the trial court held that Hojan was advised of his Miranda rights prior to being questioned and that he voluntarily waived those rights.") (footnote omitted). Contrary to Hojan's assertion that this precise issue presently before us was not previously addressed

during his direct appeal, we disagree with Hojan and conclude, as did the trial court, that a criminal defendant may not relitigate any issue previously decided in his direct appeal, merely guised as an allegation that trial counsel was ineffective.

Vienna Convention

We find that there was conclusive evidence in the record to support the circuit court's finding that: (1) Hojan was born in the United States and he is still a citizen of this nation; and (2) Hojan was arrested and imprisoned for committing crimes in the United States (Florida).

Therefore, despite Hojan's assertion that his father is a German national and his mother a Jamaican national, the circuit court correctly relied on existing case law in concluding that the Vienna Convention does not apply in Hojan's case. Compare Darling v. State, 808 So. 2d 145, 165-66 (Fla. 2002) (holding the Vienna Convention applied where a capital defendant, charged with first-degree murder in the United States, was a foreign national and citizen of the Bahamas), with Lugo v. State, 2 So. 3d 1, 17-18 (Fla. 2008) (holding the Vienna Convention did not apply where the defendant, an American citizen in the Bahamas, sought for crimes committed in the United States, was arrested by Bahamian authorities at the request of United States officials).

The circuit court reasonably concluded that even if Hojan had been able to become eligible for consular assistance from Germany or Jamaica, his rule 3.851

motion failed to allege that he would have sought such assistance under the Vienna Convention. Considering the record before us, the circuit court did not err in ruling that Hojan's rule 3.851 motion was insufficiently pleaded and conclusory. See Knight v. State, 923 So. 2d 387, 403 (Fla. 2005) ("Conclusory allegations without more are insufficient to state a claim for relief in post conviction proceedings." (citing Kennedy v. State, 547 So. 2d 912, 913 (Fla. 1989); Freeman v. State, 761 So. 2d 1055 (Fla. 2000))); Freeman, 761 So. 2d at 1061 ("The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden." (citing Kennedy, 547 So. 2d at 912)); Ragsdale v. State, 720 So. 2d 203, 207 (Fla. 1998) ("We have encouraged trial courts to hold evidentiary hearings on postconviction motions. However, where the motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied.").

Jury Selection Procedure

Hojan's allegation that his defense attorney and the prosecuting attorney colluded to select the jury at a time when he was not present and participating with his defense team initially caused us great concern. It is a well-settled proposition of law, which the circuit court acknowledged in its final order, that a criminal defendant has a right to be present at every critical stage of his or her trial. See

Muhammad v. State, 782 So. 2d 343, 351 (Fla. 2001) ("Criminal defendants have a due process right to be physically present in all critical stages of trial, including the examination of prospective jurors.")

The record before us reflects that Hojan was present during the voir dire of the entire venire that took place in open court, on the record, and before the presiding judge. In addition, Hojan was present for all of the cause challenges of the potential jurors and the trial court's rulings thereon on the record. After reviewing the record before us, we find that the unusual procedure employed in the selection of Hojan's jury did not violate his rights to due process under the law.

The unusual aspect of the jury selection process occurred when counsel for the parties agreed, sometime after the close of the trial proceedings for the day prior to the intervening weekend, to forego the exercise of any peremptory challenges to any of the remaining venirepersons. At that time, off the record and when Hojan and the presiding judge were not present, the attorneys agreed on twelve jurors and four alternate jurors. On the following Monday, counsel informed the trial court, on the record, that they had mutually agreed to the jury and the alternates by way of the aforementioned out-of-court jury selection procedure. The trial court granted defense counsel approximately forty-five minutes to confer with Hojan about the stated jury selection procedure.

Afterward, the trial judge conducted an extensive colloquy with Hojan to ensure that he agreed to the jury and ratified the jury selection procedure that his defense counsel had engaged in with the prosecution.

> THE COURT:  Mr. Hojan, the individuals whose names I've called out–you've been sitting here since we started picking this jury last Tuesday; is that correct?
> MR. HOJAN:  Yes, sir.
> THE COURT:  And you had an opportunity Tuesday and Wednesday—even though we dismissed the panel that were here Tuesday and Wednesday until we started again in the afternoon—you've been here participating with your lawyers through every stage of the jury selection process; correct?
> MR. HOJAN:  Yes, Your Honor.
> THE COURT:  And you've consulted with your lawyers as it relates to the challenges for cause that were raised by the Defense?
> MR. HOJAN:  Yes, Your Honor.
> THE COURT:  And you're aware that as of today we have twenty-seven individuals that have not been stricken for cause?
> MR. HOJAN:  Yes, Your Honor.
> . . . .
> THE COURT:  And of course you were here during all of the questioning with those individuals; correct?
> MR. HOJAN:  Yes, Your Honor.
> THE COURT:  Is that an acceptable group of individuals to try your case?
> MR. HOJAN:  Yes, Your Honor.
> . . . .
> THE COURT:  And they're acceptable to you; correct?
> MR. HOJAN:  Yes, Your Honor.
> THE COURT:  Now, you understand in the process of selecting a jury, in addition to challenges for cause, both the State and the Defense have what we call preemptory challenges, which you can utilize to strike individuals from the panel?
> MR. HOJAN:  Yes, sir.
> THE COURT:  Your side has ten and the State has ten for a total of twenty.
> MR. HOJAN:  Yes, Your Honor.

THE COURT: You understand that effectively we have not gone through the process of actually exercising strikes?

MR. HOJAN: Yes, Your Honor.

. . . .

THE COURT: So, effectively, without the exercise of preemptory strikes, effectively both sides were striking certain individuals to get us to the twelve primary, four alternates.

MR. HOJAN: Yes, Your Honor.

THE COURT: And these individuals are acceptable to you to try the case?

MR. HOJAN: Yes, Your Honor.

THE COURT: Are you under the influence of any alcohol or drugs?

MR. HOJAN: No, Your Honor.

THE COURT: Do you need additional time or wish additional time with your lawyers to consult with them on this matter?

MR. HOJAN: No, Your Honor.

THE COURT: And, in fact, you have had an opportunity, at this point it's more like forty-five minutes, to sit, talk with your lawyers, to go through this process?

MR. HOJAN: Yes, Your Honor.

THE COURT: And understand the jury and the selection of the jury has to be acceptable to you?

MR. HOJAN: Yes, Your Honor.

THE COURT: This is your case.

MR. HOJAN: Yes, Your Honor.

THE COURT: And you've involved yourself and participated in this selection process; correct?

MR. HOJAN: Yes, Your Honor.

THE COURT: And again, they are acceptable?

MR. HOJAN: Yes, Your Honor.

The record shows that there was no critical stage of Hojan's trial for which he was not present. There is competent, substantial evidence in the record from which we conclude that all the venirepersons who were not previously dismissed by the trial court for cause by the close of proceedings on the preceding Friday, in

- 14 -

fact, returned to participate in the next day trial court proceedings. Because there is no record evidence that any of the venirepersons were excluded by the out-of-court jury selection procedure and that all were present in court until after the trial court had formally excused them, we are satisfied that Hojan was not deprived of his right to due process by being involuntarily absent from a critical stage in his trial. Because Hojan ratified the jury selection procedure after-the-fact, the circuit court did not err in summarily denying relief as to this subclaim. See Muhammad, 782 So. 2d at 352 ("In State v. Melendez, 244 So. 2d 137, 139 (Fla. 1971), defense counsel consented to the continued examination, challenging, and empaneling of the jury even though the defendant was physically absent from the courtroom. This Court held that no error occurs when the defendant is represented by counsel who waives the presence of the defendant and the defendant later ratifies the action of counsel."); see also Kormondy v. State, 983 So. 2d 418, 429 (Fla. 2007) ("As this Court held in Amazon v. State, 487 So. 2d 8, 11 (Fla. 1986), '[a] capital defendant is free to waive his presence at a crucial stage of the trial. Waiver must be knowing, intelligent, and voluntary. Counsel may make the waiver on behalf of a client, provided that the client, subsequent to the waiver, ratifies the waiver either by examination by the trial judge, or by acquiescence to the waiver with actual or constructive knowledge of the waiver.' "). Furthermore, because the circuit court found that the postconviction record conclusively shows neither party exercised

any of its peremptory challenges, the circuit court properly concluded that Hojan was not entitled to any relief because he was not involuntarily absent during such a critical stage of his trial.  See Muhammad, 782 So. 2d at 352.

Notwithstanding the absence of trial court error in the jury selection of Hojan's trial, we caution in the strongest terms that counsel should refrain from engaging in any off-the-record agreements about the selection of the jury in a criminal trial.  We especially emphasize this caution in capital murder cases where the defendant is subject to the ultimate and immutable sentence of death.  There is no reason for counsel to engage in any trial procedure that gives even an impression—be it ever so slight—that an impropriety has occurred or that the defendant may have been deprived of a fair trial.  We will be inflexible and intolerant of any actual violations of defendants' rights that occur as a result of "creative" procedures used during the critical stages of criminal trials.

It is our expectation and charge to the lawyers and judges of Florida that every stage of the criminal trial of any person shall be conducted on the record so that the reviewing courts will have the benefit of the clearest and most complete record from which to evaluate the propriety of the trial proceedings.  We put all on notice that we will be ever vigilant to fulfill our role as the oversight body of Florida's Judicial Branch in ensuring that every person is afforded a fair trial and that the proper administration of justice is scrupulously maintained.

<u>Ineffective Assistance of Trial Counsel—Failure to Advise about the</u>
<u>Consequences of Waiving Mitigation During the Penalty Phase</u>

The circuit court properly concluded that the issue of Hojan's waiver of his

right to present mitigation evidence was procedurally barred because that issue was

fully addressed during his direct appeal.

> In summary: (1) Hojan knowingly, intelligently, and voluntarily
> waived his right to mitigation, and thus <u>Koon</u> was satisfied; (2) there
> is no evidence in the record that the trial court gave the jury's
> recommendation "great weight," as was prohibited in <u>Muhammad</u>; (3)
> it was reasonable for the trial court not to force Hojan's mother to
> testify when her son had expressly asked her not to testify; (4) Hojan
> is barred from claiming that [Attorney] Moldof's performance was
> ineffective in the presentation of mitigating evidence because Hojan
> waived presentation of mitigation evidence; and (5) there is evidence
> in the record that the trial court considered the contents of the PSI.
> Accordingly, we deny all five of Hojan's subclaims in this issue.

<u>Hojan</u>, 3 So. 3d at 1217.

No Competent Mental Health Evaluation

The circuit court properly summarily denied Hojan's subclaim that trial

counsel failed to ensure that he had a competent mental health evaluation for

purposes of preparing mitigation evidence in accordance with the requirements of

<u>Ake v. Oklahoma</u>, 470 U.S. 68, 84 (1985). This subclaim is procedurally barred

because Hojan failed to raise the issue on direct appeal. <u>See</u> <u>Floyd v. State</u>, 18 So.

3d at 432, 456 (Fla. 2009) ("Floyd did not raise an <u>Ake</u> claim in his direct appeal

and, therefore, this claim is procedurally barred.") (citing <u>Marshall v. State</u>, 854

So. 2d 1235, 1248 (Fla. 2003)).

- 17 -

Reality of Death Row

Similarly, the circuit court did not err in summarily denying Hojan's subclaim that trial counsel was deficient in adequately advising Hojan about the reality of being sentenced to death row. The record demonstrates that trial counsel and the trial court repeatedly discussed with Hojan the consequences of waiving mitigation during the penalty phase and, subsequently, during the Spencer hearing. Spencer v. State, 615 So. 2d 688 (Fla. 1993). Moreover, the record shows that Hojan signed a notarized document attesting that he instructed his defense team to cease any investigation of mitigating circumstances in his case. In that notarized document, Hojan also acknowledged that without presenting mitigation evidence, he was more likely to be sentenced to death. Therefore, the record conclusively shows that Hojan was not entitled to relief because he cannot establish that counsel was deficient.[7] See Barnes, 124 So. 3d at 911; Power v. State, 886 So. 2d 952,

---

7. Under Strickland v. Washington, 466 U.S. 668 (1984), in order for a defendant to obtain relief based on an allegation of ineffectiveness of trial counsel he or she must

> [f]irst . . . identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

Occhicone v. State, 768 So. 2d 1037, 1045 (Fla. 2000) (quoting Maxwell v. Wainright, 490 So. 2d 927, 932 (Fla. 1986)).

959-61 (Fla. 2004) (stating that this Court will not overrule the trial court's conclusion that counsel's performance was not deficient when the record demonstrates that evidence that the defendant interfered with trial counsel's ability to obtain and present mitigating evidence).

## Lethal Injection Protocol

The circuit court properly concluded that Hojan's trial counsel was not ineffective for failing to explain the lethal injection protocol and the risks associated with its use of pentobarbital. Specifically, the circuit court reasonably relied on Peede v. State, 955 So. 2d 480, 502-03 (Fla. 2007), in concluding that trial counsel cannot be deemed ineffective for not anticipating a then future change in the lethal injection protocol. Thus, we find no error occurred as to this matter.

## No Prejudice

Furthermore, the circuit court concluded that Hojan was not prejudiced concerning the aforementioned subclaims in light of the six aggravating circumstances found in Hojan's case. See Hojan, 3 So. 3d at 1208 ("The aggravators found were: (1) Hojan committed a prior capital felony—the contemporaneous murders and attempted murder; (2) Hojan committed the murders in the course of an armed kidnapping; (3) the murders were committed to avoid arrest; (4) the murders were committed for financial gain; (5) the murders were heinous, atrocious, or cruel (HAC); and (6) the murders were cold,

- 19 -

calculated, and premeditated (CCP).").  The circuit court further noted that even in the absence of a mitigation case, the trial court found one statutory mitigating circumstance—no significant prior criminal history.  However, as the circuit court observed, Hojan was only able to articulate that he could offer proof that supported two nonstatutory mitigating circumstances—a history of parental abandonment and neglect, and evidence of child abuse and head trauma.  Thus, the circuit court's conclusion that Hojan could not establish the prejudice prong concerning his allegation that trial counsel was ineffective for failing to advise him about the consequences of waiving mitigation during the penalty phase, is based on conclusive record evidence.  Therefore, the circuit court did not err in summarily denying Hojan an evidentiary hearing as to this subclaim.

<u>Access to Files and Other Public Records Pertaining to His Case</u>

The record before us shows that the circuit court did not err in concluding that Hojan's public records request was facially insufficient.  As presented in this appeal, Hojan's public records requests do not specify: (1) the purpose for which Hojan needs these files and other records, or (2) how he would use the public records to collaterally attack his convictions or sentences.  Moreover, Hojan merely alleges that his defense counsel satisfied the requirements of Florida Rule of Criminal Procedure 3.852 "to obtain the requested additional public records" and that "the records sought are relevant to [his] postconviction claims."  In

addition, to the extent Hojan raised facial and as-applied constitutional challenges concerning sections 27.7081 and 119.19, Florida Statutes, and rule 3.852 in the postconviction proceeding, these constitutional challenges are waived because Hojan has not raised them in the present appeal.  See Rose v. State, 985 So .2d 500, 509 (Fla. 2008) ("Rose has merely stated a conclusion and referred to arguments made below.  Thus, we consider the issue waived for appellate review."); see also Hodges v. State, 885 So. 2d 338, 357 (Fla. 2004) ("[T]he substantive issue underlying Hodges' claim is procedurally barred because Hodges could have but did not raise the argument on appeal." (citing Harvey v. Dugger, 656 So. 2d 1253, 1256 (Fla. 1995)).

Allegation that Newly Discovered Evidence
Affected Forensic Evidence Admitted at Trial

The record shows that in denying an evidentiary hearing on Hojan's claim that the NAS Committee's 2009 report pertaining to forensic science constitutes newly discovered evidence, the circuit court reasonably relied on the requirements established in our prior decisions.  See Schwab v. State, 969 So. 2d 318, 325 (Fla. 2007) ("First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence.  Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial."); Johnston v. State, 27 So. 3d 11 (Fla. 2010) ("As we explain

below, we agree with the postconviction court that the report[, National Academy of Sciences titled, "Strengthening Forensic Science in the United States: A Path Forward" (2009),] presented by Johnston does not constitute newly discovered evidence. . . . The report cited by Johnston does not meet the test for newly discovered evidence. . ."). In light of its application of our precedent, we find that the circuit court did not err in arriving at its conclusion of law that the 2009 NAS report does not constitute newly discovered evidence that could affect the outcome of Hojan's trial.

### Bar Rule that Prohibits Post-Trial Juror Interviews

The circuit court provided three reasons why it rejected Hojan's claim that Rule Regulating The Florida Bar 4-3.5(d)(4)[8] unconstitutionally denies him the

---

8. Rule Regulating the Florida Bar 4-3.5(d)(4) states that a lawyer shall not,

> after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the venire or jurors in the course of official proceedings or as authorized by court rule or written order of the court.

opportunity to fully explore possible misconduct and biases of the jury for purposes of demonstrating the unfairness of the trial. First, relying on Troy v. State, 57 So. 3d 828 (Fla. 2011), the circuit court concluded that the claim was procedurally barred because it should have been addressed on direct appeal. Second, the present claim has been repeatedly analyzed and rejected by this Court. See, e.g., id. at 841; Sweet v. Moore, 822 So. 2d 1269, 1274 (Fla. 2002); Johnson v. State, 804 So. 2d 1218, 1225 (Fla. 2001). Third, Hojan neither alleged that he filed a motion requesting permission to interview any juror nor alleged any specific juror misconduct. We agree with the circuit court's conclusion that Hojan's claim was an attempted fishing expedition in the guise of a constitutional challenge to Bar rule 4-3.5(d)(4); these types of fishing expeditions are prohibited under existing Florida law. See Arbelaez v. State, 775 So. 2d 909, 920 (Fla. 2000) (rejecting the defendant's claim relating to his inability to interview jurors because it amounted to a request to "conduct 'fishing expedition' interviews with the jurors after a guilty verdict is returned"). Thus, the record before us demonstrates that the circuit court neither erred in drawing its legal conclusions nor in entering a summary judgment pertaining to this claim.

<u>Florida's Lethal Injection Protocol</u>

In light of our decisions in <u>Valle v. State</u>, 70 So. 3d 530 (Fla. 2011), and

<u>Lightbourne</u>,[9] the circuit court correctly rejected Hojan's claim that this State's

current lethal injection protocol violates the Eighth Amendment to the United

States Constitution because the administration of the drugs is procedurally

inadequate. As the circuit court aptly points out, this specific Eighth Amendment

challenge has previously been raised by other defendants and rejected by this

Court. <u>See, e.g.</u>, <u>Tompkins v. State</u>, 994 So. 2d 1072, 1080-82 (Fla. 2008); <u>Power

v. State</u>, 992 So. 2d 218, 220-21 (Fla. 2008); <u>Woodel v. State</u>, 985 So. 2d 524, 533-

34 (Fla.), <u>cert. denied</u>, 555 U.S. 1036 (2008); <u>Schwab v. State</u>, 969 So. 2d 318 (Fla.

2007). Furthermore, Hojan has not presented any compelling reason why we

should reconsider our position on this matter. Accordingly, we conclude that the

circuit court did not err in summarily denying Hojan any relief as to this claim.

**Standard of Review—Habeas Corpus**

It is well settled in existing case law that

[c]laims of ineffective assistance of appellate counsel are
appropriately presented in a petition for writ of habeas corpus. <u>See</u>
<u>Freeman</u>, 761 So. 2d [1055, 1069 (Fla 2000)]. Consistent with the
<u>Strickland</u> standard, to grant habeas relief based on ineffectiveness of
appellate counsel, this Court must determine first, whether the alleged
omissions are of such magnitude as to constitute a serious error or
substantial deficiency falling measurably outside the range of

---

9. <u>Lightbourne v. McCollum</u>, 969 So. 2d 326 (Fla. 2007).

professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986); see also Lynch v. State, 2 So. 3d 47, 84-85 (Fla. 2008); Freeman, 761 So. 2d at 1069. In raising such a claim, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So. 2d at 1069; see also Knight v. State, 394 So. 2d 997, 1001 (Fla. 1981).

Jackson v. State, 127 So. 3d 447, 476 (Fla. 2013).

## Merits—Habeas Corpus

Hojan alleges that his appellate counsel was ineffective during his direct appeal for failing to raise three issues that would have warranted a reversal of the judgments of guilt or the sentences imposed. First, he alleges that appellate counsel unreasonably failed to raise on direct appeal that Hojan was involuntarily absent from the jury selection, which is a critical stage of the trial proceedings. Second, he alleges that appellate counsel unreasonably failed to raise on direct appeal that the trial court erred in admitting remote prior bad acts that were unduly prejudicial. Third, he alleges that appellate counsel unreasonably failed to raise on direct appeal how the Fourth District's decision in Jimmy Mickel's direct appeal should have impacted the review of the trial court's finding of the cold, calculated, and premeditated (CCP) aggravating circumstance and this Court's proportionality analysis.

## Involuntary Absence of the Defendant

As we previously discussed, the record is clear about the fact that Hojan subsequently ratified the jury selection procedure that was employed during his trial.  Therefore, we do not find any reason that trial counsel acted unreasonably by not doing anything to preserve this sub-issue at trial for subsequent review on direct appeal.  See Muhammad, 782 So. 2d at 352.  Accordingly, had appellate counsel chosen to raise the issue of Hojan's absence when the jury was selected on direct appeal, such a claim would have been rejected as unpreserved and meritless.  See Stephens v. State, 975 So. 2d 405, 426 (Fla. 2007) ("[A]ppellate counsel cannot be deemed ineffective for failing to raise this claim on direct appeal because even if he had done so, this Court would have declined to address the merits of the claim." (citing Lukehart v. State, 776 So. 2d 906 (Fla. 2000))).

## Impermissible Admission of Bad Act Evidence

Even though the prior bad acts subclaim was not raised on direct appeal, appellate counsel's failure to do so does not constitute ineffectiveness.  The rule governing the admissibility of evidence related to other crimes, wrongs, or acts that was established in Williams v. State, 110 So. 2d 654 (Fla. 1959) has been codified in section 90.404, Florida Statutes.

> Similar fact evidence of other crimes, wrongs, or acts is admissible
> when relevant to prove a material fact in issue, including, but not
> limited to, proof of motive, opportunity, intent, preparation, plan,
> knowledge, identity, or absence of mistake or accident, but it is

inadmissible when the evidence is relevant solely to prove bad character or propensity.

§ 90.404(2)(a), Fla. Stat. (2002).

The circuit court's order denying Hojan's rule 3.851 motion drew the following notable conclusion:

> [T]he testimony of witnesses Kendrick and Burkhardt, which established that [Hojan] possessed a gun similar to the one used to shoot the victims in this case, does not fall within the Williams rule. . . . The testimony was properly admitted to show that [Hojan] possessed the same type of weapon [as used in these crimes] . . . especially since [Hojan] did not want to stipulate that he possessed the murder weapon.

Based on the record before us, we independently conclude that because the testimonial evidence challenged by Hojan is not the kind of evidence that violates the Williams rule, appellate counsel cannot be deemed ineffective for not raising a meritless challenge pertaining to this subclaim during Hojan's direct appeal. See Stephens, 975 So. 2d at 426.

### Failure to Consider the Decision in Former Codefendant's Case

Hojan argues that the following excerpt from Mickel v. State, 929 So. 2d 1192 (Fla. 4th DCA 2006), demonstrates appellate counsel's ineffectiveness as to this subclaim because it lends clear support for a conclusion that Mickel substantially dominated Hojan during the entire criminal episode that resulted in Hojan's convictions and sentences:

The judge, after reviewing the [pre-sentencing investigation report], hearing comments from the victim's families, considering the evidence at Mickel's trial, and considering the state's recommendation, stated:

> There is no question having sat through both Mr. Hojan's trial and your trial that you were the mastermind behind this entire thing. You manipulated Mr. Hojan. He was there, he did your bidding, and the three times that he left that freezer and went back to your location, there was no question what was going on at that point. You were telling him, no witnesses, no witnesses, no witnesses, and he went back and he went forth, and he went back, and he pulled the trigger and that pull of the trigger was a cold, calculated, premeditated act that was precipitated by your direction. No question about that.

The court sentenced Mickel to five consecutive life sentences. Id. at 1195-96.

In Lawrence v. State, 846 So. 2d 440 (Fla. 2003), we considered the claim that the trial court abused its discretion by not recognizing there was sufficient evidence for finding the substantial domination mitigating circumstance. Lawrence, 846 So. 2d at 448-50.

> We, however, do not find support in the record for Lawrence's contentions. There was no evidence presented or proffered indicating how Rodgers' record influenced Lawrence's behavior in the instant crime. While Lawrence argued to the trial court that the time Lawrence and Rodgers spent together in a mental hospital suggested that Lawrence knew the substance of Rodgers' record, no evidence was presented or proffered to further this assertion. The mere possibility that Lawrence might have been able to establish this foundation through his own testimony does not create a constitutional infirmity. See State v. Raydo, 713 So. 2d 996, 1000 (Fla. 1998). Moreover, if the trial court erred in excluding Rodgers' record, that

> error was harmless given the extensive evidence in the record regarding Rodgers' history with Lawrence.  See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).
>
> Regarding the trial court's finding that the substantial domination mitigator was not established by the evidence, we find that there is competent, substantial evidence to support the trial court's finding.

Id. at 449.

Here, Hojan attempts to establish that appellate counsel was ineffective for failing to raise the issue that is premised on the trial judge's characterization of his former codefendant Jimmy Mickel as the "mastermind" to substantiate his substantial domination subclaim.  However, the record in Hojan's case is more reminiscent of that found in Lawrence, namely, Hojan's conclusory claim only points to a "mere possibility" that the trial judge's denomination of Mickel as the mastermind "establish[es] [a] constitutional infirmity."  See id.  In such light it is unclear how Hojan's claim constitutes a fully developed issue that appellate counsel reasonably could have raised during his direct appeal.  Thus, appellate counsel was not ineffective as to this subclaim.  See Floyd, 18 So. 3d at 458 ("This Court has held that '[i]f a legal issue "would in all probability have been found to be without merit" had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective.' " (quoting Rutherford v. Moore, 774 So. 2d 637, 643

(Fla. 2000) (quoting <u>Williamson v. Dugger</u>, 651 So. 2d at 84, 86 (Fla. 1994)));

<u>Stephens</u>, 975 So. 2d at 426 (same).

## <u>Hurst v. Florida</u> & <u>Hurst</u>

After we issued our original opinion in this case and denied rehearing, the United States Supreme Court issued its opinion in <u>Hurst v. Florida</u>. In <u>Hurst v. Florida</u>, the United States Supreme Court declared our capital sentencing scheme unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." <u>Hurst v. Florida</u>, 136 S. Ct at 619.

Pursuant to the Supreme Court's decision in <u>Hurst v. Florida</u>, Hojan filed a motion to recall mandate, reopen his habeas corpus case, and permit supplemental briefing. We granted the motion, and Hojan now contends that he is entitled to relief under <u>Hurst v. Florida</u> because of his nine-to-three jury vote recommending death. As we held in <u>Mosley v. State</u>, 41 Fla. L. Weekly S629 (Fla. Dec. 22, 2016), because the Supreme Court specifically found that "[t]he analysis the <u>Ring</u> Court applied to Arizona's sentencing scheme applies equally to Florida's" death penalty. <u>Id.</u> at S637. In <u>Mosley</u>, we determined that <u>Hurst v. Florida</u> and <u>Hurst</u> apply retroactively to defendants, like Hojan, whose sentences were not yet final when the Supreme Court issued <u>Ring</u>. See <u>Mosley</u>, 41 Fla. L. Weekly at S636.

Because we conclude that Hurst applies to Hojan, we next examine whether any Hurst error was harmless beyond a reasonable doubt. On remand from the United States Supreme Court, in Hurst we explained the appropriate standard for harmless error review:

> Where the error concerns sentencing, the error is harmless only if there is no reasonable possibility that the error contributed to the sentence. See, e.g., Zack v. State, 753 So. 2d 9, 20 (Fla. 2000). Although the harmless error test applies to both constitutional errors and errors not based on constitutional grounds, "the harmless error test is to be rigorously applied," [State v.] DiGuilio, 491 So. 2d [1129,] 1137 [Fla. 1986], and the State bears an extremely heavy burden in cases involving constitutional error. Therefore, in the context of a Hurst v. Florida error, the burden is on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the jury's failure to unanimously find all the facts necessary for imposition of the death penalty did not contribute to Hurst's death sentence in this case. We reiterate:
>
>> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact.
>
> DiGuilio, 491 So. 2d at 1139. "The question is whether there is a reasonable possibility that the error affected the [sentence]." Id.

Hurst, 202 So. 3d at 68 (alteration in original). As applied to the right to a jury trial with regard to the facts necessary to impose the death penalty, it must be clear beyond a reasonable doubt that a rational jury would have unanimously found all facts necessary to impose death and that death was the appropriate sentence.

- 31 -

Following Hojan's penalty phase, the jury recommended a sentence of death by a vote of nine to three. For both murders, the trial court found that the following aggravators applied, each of which was given great weight: "(1) Hojan committed a prior capital felony—the contemporaneous murders and attempted murder; (2) Hojan committed the murders in the course of an armed kidnapping; (3) the murders were committed to avoid arrest; (4) the murders were committed for financial gain; (5) the murders were heinous, atrocious, or cruel (HAC); and (6) the murders were cold, calculated, and premeditated (CCP)." Hojan, 3 So. 3d at 1208. Additionally, the trial court found one statutory mitigator and two nonstatutory mitigators, each given little weight. Id. The trial court found that the aggravating factors far outweighed the mitigating factors and sentenced Hojan to death.

Given the jury vote of nine to three to recommend a sentence of death, it is impossible for this Court to conclude that the Hurst error in this case was harmless beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing, we affirm the circuit court's summary denial of Hojan's postconviction motion, and we deny the claims in Hojan's petition for a writ of habeas corpus. However, we grant Hojan's supplemental claim for relief

under Hurst v. Florida. Accordingly, we vacate the death sentence and remand this case for a new penalty phase.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., concurs in part and dissents in part with an opinion, in which POLSTON, J., concurs.
PERRY, Senior Justice, concurs in part and dissents in part.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in part and dissenting in part.

I agree that the circuit court's denial of Hojan's postconviction motion should be affirmed and that Hojan's habeas petition should be denied. But I dissent from the decision to vacate the sentence of death. See Mosley v. State, 41 Fla. L. Weekly S629, 2016 WL 7406506 (Fla. Dec. 22, 2016) (Canady, J., concurring in part and dissenting in part).

POLSTON, J., concurs.

Two Cases:

An Appeal from the Circuit Court in and for Broward County,
    Paul Lawrence Backman, Judge - Case No. 062002CF005900B88810
And an Original Proceeding – Habeas Corpus

Neal Andre Dupree, Capital Collateral Regional Counsel, Southern Region, Todd Gerald Scher, Assistant Capital Collateral Regional Counsel, Southern Region, and Jessica Leigh Houston, Staff Attorney, Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

for Appellant/Petitioner

- 33 -

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Lisa-Marie Krause Lerner, Assistant Attorney General, West Palm Beach, Florida,

for Appellee/Respondent