# Supreme Court of Florida

_____

No. SC17-337
_____

**STATE OF FLORIDA,**
Appellant,

vs.

**WILLIAM FRANCES SILVIA,**
Appellee.

[February 1, 2018]

PER CURIAM.

The issue in this case is whether William Frances Silvia's original, valid

waiver of postconviction proceedings and counsel precludes him from claiming a

right to relief under Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016), cert. denied,

137 S. Ct. 2161 (2017).  This Court has jurisdiction.  See art. V, § 3(b)(1), Fla.

Const.  Silvia is a prisoner under sentence of death whose sentence, which was

imposed after a jury recommended death by a vote of 11-1, became final on June 6,

2011.  See Silvia v. State, 60 So. 3d 959, 966 (Fla. 2011).

This Court fully explained the facts underlying Silvia's sentence of death in

its opinion on direct appeal.  Id. at 963-64.  On direct appeal, Silvia argued, among

other claims, that Florida's capital sentencing scheme was unconstitutional under the United States Supreme Court's opinion in Ring v. Arizona, 536 U.S. 584 (2002), which provided the underpinnings of the United States Supreme Court's opinion in Hurst v. Florida, 136 S. Ct. 616 (2016), and Hurst. See Silvia, 60 So. 3d at 978. This Court denied the claim and affirmed Silvia's convictions and sentences. Id.

In 2012, Silvia waived his right to postconviction proceedings and counsel. See Silvia v. State, No. SC12-1863, 2013 WL 5035694, *1 (Fla. Sept. 11, 2013) (123 So. 3d 1148). Upon review in 2013, this Court "conclude[d] that the trial court did not abuse its discretion in discharging Silvia's postconviction counsel and dismissing postconviction proceedings." Id. at *2. Silvia does not dispute in this case the validity of his original waiver.

Three years after this Court affirmed the dismissal of Silvia's postconviction proceedings, the United States Supreme Court decided Hurst v. Florida, and this Court decided Hurst on remand. After Hurst, Silvia filed a Successive Motion to Vacate Death Sentence claiming a right to Hurst relief. The postconviction court concluded that Silvia was not "seeking to reinstate his previously waived postconviction proceedings because he had changed his mind" but was "seeking to avail himself of a newly established constitutional right he did not possess at the time of the waiver." The court determined that Silvia "could not knowingly and

voluntarily waive a right . . . he did not possess at the time of the waiver" and, therefore, found that Silvia "is not precluded from seeking Hurst relief." Applying Hurst to Silvia's sentence, the postconviction court granted Silvia a new penalty phase. The State appealed.

The issue in this case is whether Silvia's waiver of postconviction proceedings and counsel precludes him from claiming a right to Hurst relief. Although there is certainly a difference between a defendant who changes his mind after validly waiving postconviction proceedings and a defendant who asserts a right to relief under Hurst, we conclude that this distinction does not afford Silvia any basis for claiming Hurst relief that would entitle him to a new penalty phase.

In Mullens v. State, 197 So. 3d 16 (Fla. 2016), an analogous case, a defendant waived the right to a penalty phase jury and then attempted to claim a right to relief under Hurst. This Court denied relief, explaining that a defendant "cannot subvert [a] right . . . by waiving that right and then suggesting that a subsequent development in the law has fundamentally undermined his sentence." Id. at 40. In Mullens, this Court held that Hurst does not apply to defendants who validly waived their right to a penalty phase jury, writing:

> If a defendant remains free to waive his or her right to a jury trial, even if such a waiver under the previous law of a different jurisdiction automatically imposed judicial factfinding and sentencing, we fail to see how Mullens, who was entitled to present mitigating evidence to a jury as a matter of Florida law even after he pleaded guilty and validly waived that right, can claim error. As our sister

- 3 -

courts have recognized, accepting such an argument would encourage capital defendants to abuse the judicial process by waiving the right to jury sentencing and claiming reversible error upon a judicial sentence of death.

Id. at 39-40 (emphasis omitted).

In this case, Silvia does not challenge the validity of his postconviction waiver. In fact, in reviewing Silvia's waiver in 2013, this Court made clear:

> In addition, Silvia indicated that he understood that by waiving postconviction proceedings early in the process—before a motion was filed—<u>he was losing permanently his right to take advantage of any changes that may occur in the law</u>, that he was waiving his right to federal review, and that because his attorneys had not yet completed their discovery, it was unknown what issues could be raised. Silvia acknowledged that he understood everything his attorneys had done to date and that his attorneys could discover information that would be beneficial to him in postconviction. Silvia indicated that he understood that the issues in his case were not fully developed, that his attorneys could not proceed further in their investigation without his cooperation, and that his attorneys could discover information that would be beneficial to him. He nevertheless indicated that he did not wish his attorneys to proceed with any further discovery and that he was voluntarily waiving his postconviction counsel and proceedings.

Silvia, 2013 WL 5035694, at *2 (emphasis added). Further, at the time of Silvia's postconviction waiver in 2012, Ring, which provided the underpinnings for Hurst v. Florida, had been decided for over a decade and almost all defendants, including Silvia, had raised a Ring claim on direct appeal. Thus, we conclude that Silvia's original, valid postconviction waiver, which he has never contested before this Court, precludes him from claiming a right to relief under Hurst.

**CONCLUSION**

For the reasons fully explained above, we conclude that Silvia's valid postconviction waiver, which included his understanding that "he was losing permanently his right to take advantage of any changes that may occur in the law," Silvia, 2013 WL 5035694, at *2, precludes him from claiming a right to the benefit of Hurst. Accordingly, we reverse the postconviction court's order granting Silvia a new penalty phase and reinstate his death sentence.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, POLSTON, and LAWSON, JJ., concur.
CANADY, J., concurs in result.
LEWIS, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LEWIS, J., dissenting.

Today this Court advances for the first time a new excuse, not a valid reason, to push Florida's death penalty jurisprudence into an unconstitutional abyss. This case is a classic example which illustrates application of this Court's retroactivity approach to Hurst v. Florida, 136 S. Ct. 616 (2016), and Hurst v. State, 202 So. 3d 40 (Fla. 2016), to deny relief to defendants who have fully and completely preserved the constitutional challenges to Florida's death sentencing scheme. This new denial approach results in equal protection and due process

- 5 -

violations, constitutes cruel and unusual punishment, and the arbitrary and capricious operation of the death penalty. The Court simply turns its eyes from the violation of the Sixth, Eighth, and Fourteenth Amendments under the United States Constitution and the corresponding provisions under our Florida Constitution.

The construction of our current death penalty dilemma finds its origin in the issuance of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). Although it was not a death penalty case, our high court in <u>Apprendi</u> addressed the issue of requiring a unanimous jury vote for certain factors. Two years later, in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), the United States Supreme Court applied the principles of <u>Apprendi</u> to capital defendants, holding that capital defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." <u>Ring</u>, 536 U.S. at 589. For years after <u>Ring</u>, defendants facing the death penalty in Florida, including Silvia, attempted to rely on and asserted that <u>Ring</u> required a unanimous jury verdict to support a valid death penalty judgment. Over and over and over again the concept addressed in <u>Ring</u> with regard to unanimous jury verdicts was <u>denied</u> application in death penalty proceedings in Florida. <u>E.g.</u>, <u>Pietri v. State</u>, 885 So. 2d 245, 276 (Fla. 2004) (denying relief because the felony murder aggravator involved "circumstances submitted to a jury and found to exist beyond a reasonable doubt"); <u>Sochor v. State</u>, 883 So. 2d 766, 790 (Fla. 2004) ("We previously have addressed

this [Ring] claim and denied relief."); Kimbrough v. State, 886 So. 2d 965, 984 (Fla. 2004) ("This Court has previously declined to hold that Florida's death penalty scheme is unconstitutional on the basis of Apprendi or Ring.").

It was not until January 12, 2016, when the United States Supreme Court issued Hurst v. Florida that the "fundamental constitutional right" requiring a unanimous jury verdict arose in death penalty proceedings constructed and built upon the foundational principles announced earlier in Ring.

With the issuance of Hurst v. Florida, the logical question arose as to how it would be applied and the extent to which it would be retroactively applied to those pending execution of a death sentence. That retroactivity question was answered, in part, by this Court in Asay v. State, 210 So. 3d 1 (Fla. 2016), when the Court held that Hurst would retroactively apply to only those cases in which the death penalty had been imposed on or after the date Ring had been issued in 2002. At that time, I reasoned in Asay that Hurst should also apply to cases prior to 2002 if the issue of requiring a unanimous jury verdict had been properly preserved for review in the proceedings even prior to Ring, relying on James v. State (James I), 615 So. 2d 668, 669 (Fla. 1993). Asay, 210 So. 3d at 30 (Lewis, J., concurring in result). The Court rejected that reasoning and adopted a fixed retroactive date.

Within these parameters, cases began flowing to this Court in successive postconviction motions. Those cases that became final after Ring with unanimous

jury verdicts for death were denied relief. E.g., King v. State, 211 So. 3d 866, 889-93 (Fla. 2017); Davis v. State, 207 So. 3d 142, 174-75 (Fla. 2016). Defendants in cases that became final after Ring in which the defendants had totally waived a penalty phase jury trial were also denied relief. Mullens v. State, 197 So. 3d 16, 38-40 (Fla. 2016). Until this time, in all other cases in which less than a unanimous jury verdict for death was returned, the judgment for death has been quashed and the cases remanded to the trial court for proceedings consistent with Hurst without regard to any preservation issues. Even those cases in which defendants conceded during oral argument that Ring did not apply to Florida death cases based on existing Florida law have received the benefit of Hurst, but Silvia will not simply because he did not come to this Court for an oral argument on a postconviction motion having preserved the issue at trial and on direct appeal.

We now face Silvia in which Silvia has received a post-Ring, nonunanimous death penalty verdict. Silvia v. State, 60 So. 3d 959, 966 (Fla. 2011). By now, it is well-established Florida law that Hurst requires unanimity and applies retroactively to "defendants whose sentences became final after the United States Supreme Court issued its opinion in Ring." Mosley v. State, 209 So. 3d 1248, 1276 (Fla. 2016). Thus, regardless of the majority's unwillingness to mention this fact, Hurst applies retroactively to Silvia's case. E.g., Hojan v. State, 212 So. 3d 982, 999 (Fla. 2017) ("Hurst appl[ies] retroactively to defendants, like Hojan, whose

sentences were not yet final when the Supreme Court issued <u>Ring</u>.").  There have been many post-<u>Ring</u>, nonunanimous defendants whose various appeals and postconviction motions were correctly resolved when this Court granted them <u>Hurst</u> relief.  See, e.g., <u>Gregory v. State</u>, 224 So. 3d 719 (Fla. 2017) (post-<u>Ring</u>, nonunanimous postconviction motion defendant); <u>Jeffries v. State</u>, 222 So. 3d 538 (Fla. 2017) (post-<u>Ring</u>, nonunanimous direct appeal defendant); <u>Bailey v. Jones</u>, 225 So. 3d 776 (Fla. 2017) (post-<u>Ring</u>, nonunanimous habeas corpus petition defendant).  In view of these cases, the appropriate disposition is clear.  Yet, for the <u>first</u> time, the majority decision eschews recent precedent and denies <u>Hurst</u> relief to a post-<u>Ring</u>, nonunanimous defendant because he did not continue a meritless, fruitless—and at that point frivolous—<u>Ring</u> challenge in the context of a <u>postconviction proceeding</u> even though he had asserted that right during trial and on direct appeal and had fully preserved the argument for appellate purposes. <u>Silvia</u>, 60 So. 3d at 978.  Silvia was <u>not</u> even required to file for postconviction relief but did file and later withdrew his meritless pleading.  This arbitrary denial of rights treats similarly situated defendants differently.  In doing so, Silvia is being denied equal protection and due process under the law, violating his rights under the Fourteenth Amendment and article I, section 2 of the Florida Constitution.

Although not specifically stated, the basis for this decision is simple, albeit misguided. However, by skirting the underlying law, the majority disregards the real substance of the question presented and develops a holding absent any precedential support. The decision impliedly relies upon the concept regarding a waiver of postconviction proceedings. <u>See</u> majority op. at 3. As a general matter, this Court has held that the waiver of postconviction proceedings is a final determination. <u>See</u> <u>Trease v. State</u>, 41 So. 3d 119, 126 (Fla. 2010); <u>James v. State</u> (<u>James II</u>), 974 So. 2d 365, 368 (Fla. 2008). Nevertheless, neither <u>Trease</u> nor <u>James II</u> determinatively answers the issue in this case. Our <u>James II</u> holding was actually quite narrow: "[W]e conclude that a <u>mere change of mind is an</u> <u>insufficient basis</u> for setting aside a previous waiver." <u>James II</u>, 974 So. 2d at 368 (emphasis added). We explained that James could not overcome his waiver because there was no dispute that the <u>Durocher</u>[1] proceedings were followed and James "asserted no valid basis for avoiding his waiver." <u>James II</u>, 974 So. 2d at 368. Likewise, as it concerned reversing the waiver of postconviction proceedings, <u>Trease</u> held that "because this Court in <u>James[ II]</u> held that a change of mind is insufficient grounds to set aside a prior valid waiver, we deny Trease's request to

---

1. <u>Durocher v. Singletary</u>, 623 So. 2d 482, 485 (Fla. 1993) (establishing that a defendant is entitled to waive postconviction proceedings so long as there is an inquiry conforming to <u>Faretta v. California</u>, 422 U.S. 806 (1975), into the "knowing, intelligent, and voluntary" nature of the waiver).

- 10 -

reinstate his postconviction proceedings." Trease, 41 So. 3d at 126. Trease and James II are factually distinguishable from this case because, here, Silvia did not simply change his mind like the defendants in those cases. Instead, the trial court here—which is better positioned than this Court to determine Silvia's intentions—specifically found that Silvia "is not seeking to reinstate his previously waived postconviction proceedings because he has changed his mind. Rather he is seeking to avail himself of a newly established constitutional right, which has been held to apply retroactively." As a result, the trial court here vacated Silvia's death sentence. In my view, the constitutional rights generated by Hurst are a sufficient basis to avoid Silvia's waiver. Cf. James II, 974 So. 2d at 368 (changing of the mind was not a sufficient basis). Such a scenario is specifically contemplated as an exception to the time limitation on postconviction motions under Florida Rule of Criminal Procedure 3.851:

> (2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1)[2] unless it alleges:
> . . . .
> (B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively . . . .

---

2. This subdivision prescribes a one-year time limit on filing an initial postconviction motion after the sentence becomes final. See Fla. R. Crim. P. 3.851(d)(1).

Fla. R. Crim. P. 3.851(d)(2)(B). Accordingly, nothing in Florida law precludes Silvia from raising a Hurst claim.

In the past, this Court has granted relief on changes in the law retroactively to postconviction defendants who preserved the issue for review on their direct appeal prior to the change. James I, 615 So. 2d at 669. In James I, we granted relief to a defendant who had asserted at trial and on direct appeal that the jury instruction pertaining to the heinous, atrocious, or cruel aggravating circumstance was unconstitutionally vague before the United States Supreme Court ultimately reached that same conclusion in Espinosa v. Florida, 505 U.S. 1079 (1992). James I, 615 So. 2d at 668-69. We concluded that—despite his case becoming final before the principle of law had a case name—it would be unjust to deprive James of the benefit of the Supreme Court's holding in Espinosa after he had properly presented and preserved such a claim. James I, 615 So. 2d at 669. Similarly, I believe that defendants who properly preserved the substance of a Ring challenge at trial and on direct appeal prior to that decision should also be entitled to have their constitutional challenges heard. Hitchcock v. State, 226 So. 3d 216, 218-19 (Fla. 2017) (Lewis, J., concurring in result); Asay, 210 So. 3d at 30 (Lewis, J., concurring in result). Similar to the defendant in James I, Silvia properly preserved his Ring challenge at trial and on direct appeal. Silvia, 60 So. 3d at 978.

Therefore, Silvia is entitled to Hurst relief.  He could not validly waive a constitutional right that simply did not exist at the time of the alleged waiver.

In Mosley, this Court recognized that "fundamental fairness alone may require the retroactive application of certain decisions involving the death penalty after the United States Supreme Court decides a case that changes our jurisprudence."  Mosley, 209 So. 3d at 1274-75.  There, we cited James I and held that, "because Mosley raised a Ring claim at his first opportunity and was then rejected at every turn, we conclude that fundamental fairness requires the retroactive application of Hurst, which defined the effect of Hurst v. Florida, to Mosley."  Mosley, 209 So. 3d at 1275.  In that case, we further conducted a standard retroactivity analysis under Witt v. State, 387 So. 2d 922 (Fla. 1980); however, Mosley clearly stands for the proposition that, under James I, it is fundamentally unfair to withhold Hurst relief to post-Ring, nonunanimous defendants who properly raised the issue, regardless of whether they are in this Court on direct appeal or postconviction motion.  Mosley, 209 So. 3d at 1274-75.  Therefore, to deny Hurst relief to Silvia is a violation of his right to due process under the Fourteenth Amendment and article I, section 9 of the Florida Constitution.  See Gore v. State, 719 So. 2d 1197, 1203 (Fla. 1998) ("Due process requires that fundamental fairness be observed in each case for each defendant.").

As a practical matter, if Silvia had merely re-raised his <u>Ring</u> claim in a

postconviction motion, then he would be entitled to <u>Hurst</u> relief. Yet, at the time

of his postconviction proceedings, any <u>Ring</u> challenge by Silvia was futile,

meritless, and frivolous. <u>See</u> <u>Johnson v. State</u>, 904 So. 2d 400, 406 (Fla. 2005)

("[V]irtually every postconviction appeal filed in this Court since <u>Ring</u> invokes

that case. We repeatedly have denied such requests for clear lack of merit . . . ."),

<u>abrogated by</u> <u>Jackson v. State</u>, 213 So. 3d 754 (Fla. 2017). Moreover, under this

Court's broader postconviction standard, it would have been inappropriate for

Silvia to continue his <u>Ring</u> challenge through postconviction proceedings. This

Court has stated,

> The purpose of the Rule 3.850[3] motion is to provide a means
> of inquiry into the alleged constitutional infirmity of a judgment or
> sentence, not to review ordinary trial errors cognizable by means of a
> direct appeal. The motion procedure is neither a second appeal nor a
> substitute for appeal. <u>Matters which were raised on appeal and</u>
> <u>decided adversely to the movant are not cognizable by motion under</u>
> <u>Rule 3.850</u>. Furthermore, any matters which could have been
> presented on appeal are similarly held to be foreclosed from
> consideration by motion under the Rule. <u>Therefore, a Rule 3.850</u>
> <u>motion based upon grounds which either were or could have been</u>
> <u>raised as issues on appeal may be summarily denied.</u>

---

3. Today, capital postconviction motions are covered by Florida Rule of
Criminal Procedure 3.851, which was adopted in 1993. <u>See</u> Fla. R. Crim. P. 3.851
cmt. (1993).

McCrae v. State, 437 So. 2d 1388, 1390 (Fla. 1983) (emphasis added) (citations omitted). Silvia properly preserved the error and unsuccessfully challenged Ring at trial and on direct appeal. Silvia, 60 So. 3d at 978. Therefore, there was nothing further for Silvia to challenge relating to the unconstitutionality of Florida's previous death scheme through postconviction proceedings and he was not required to perform a frivolous act. Moreover, nothing requires capital defendants to pursue postconviction proceedings. Despite this, the majority denies the Hurst relief that is clearly warranted. Such a decision effectively encourages postconviction counsel to raise meritless claims, even if they have been decided on direct appeal, simply to satisfy an arbitrary procedural step in the hope of future retroactivity.

Crucially, nothing in this Court's post-Hurst jurisprudence suggests any requirement for defendants to have pursued postconviction appeals to receive the benefit of Hurst. This Court has noted, however, that defendants who waived their Sixth Amendment right to a jury are precluded from benefitting from Hurst. E.g., Mullens, 197 So. 3d at 38-40. Because the defendant in Mullens waived the rights to which Hurst applied, we correctly concluded that the defendant waived his entitlement to Hurst relief. Mullens, 197 So. 3d at 38-40. The majority relies on Mullens as "an analogous case" and its only support for this decision. Majority op. at 3-4. It never explains why Mullens is analogous, and perhaps that is because

Mullens is inapposite.  Mullens totally waived his rights to a penalty phase jury determination to which Hurst applied.  Whereas, here, Silvia simply did not proceed with postconviction proceedings, which is wholly separate from the Sixth and Eighth Amendment rights implicated by Hurst.  In effect, the majority attempts to compare a lightning bug to the lightning.  A little over one year ago, in Hurst, this Court waxed poetic about the right to a jury trial as a quintessential right in both Florida and the United States.  Hurst, 202 So. 3d at 53-59.  We called this right our "birthright and inheritance."  Id. at 54 (quoting Duncan v. Louisiana, 391 U.S. 145, 154 (1968)).  Yet, now the Court equates waiver of this "birthright" to not proceeding with postconviction proceedings—which originally were a judicial creation to efficiently address the "postconviction crisis" caused in Florida by Gideon v. Wainwright, 372 U.S. 335 (1963).  See Baker v. State, 878 So. 2d 1236, 1238-44 (Fla. 2004) (surveying the history of postconviction relief in Florida).  Silvia did not waive his right to a jury and that jury returned a nonunanimous death recommendation.  Quite simply, to deny him relief is to deny him his right to a jury trial under the Sixth Amendment and article I, section 22 of the Florida Constitution, along with his right to be free from an arbitrary death penalty under the Eighth Amendment and article I, section 17 of the Florida Constitution.

Relatedly, the majority does not make clear whether it treats Silvia's waiver of postconviction proceedings as a waiver of his right to habeas corpus.  Of course,

habeas corpus constitutes a substantial portion of postconviction proceedings; thus it would appear that this decision may effectively preclude Silvia and other similarly situated defendants from filing writs of habeas corpus. If this understanding is correct, then the decision borders dangerously on a suspension of these writs to a class of individuals, the right to which is protected under article I, section 9 of the United States Constitution and article I, section 13 of the Florida Constitution. In my view, our case law on not proceeding with postconviction proceedings does not supersede the express language of our Florida Constitution: "The writ of habeas corpus shall be grantable by right, freely and without cost." Art. I, § 13, Fla. Const.

Finally, this decision is ripe for reversal. As demonstrated above, there are a number of constitutional claims that Silvia can raise from this decision. Furthermore, unlike <u>Asay</u> which, despite its faults, relied heavily on Florida's adequate and independent retroactivity standard under <u>Witt</u>, <u>Asay</u>, 210 So. 3d at 15-22, this decision does not rely on <u>any</u> standard. The reasoning here amounts to "this is the answer because I say it is." Considering the fundamental constitutional rights at issue, such reasoning is an insufficient basis to deny <u>Hurst</u> relief.

Based on the foregoing, I would apply <u>Hurst</u> to Silvia's case, vacate his death sentence, and remand for resentencing in accordance with the Constitution, our precedent, and fundamental fairness.

An Appeal from the Circuit Court in and for Seminole County,
Donna L. Surratt-McIntosh, Judge - Case No. 592006CF004522A000XX

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Doris Meacham,
Assistant Attorney General, Daytona Beach, Florida,

for Appellant

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, and Ali A.
Shakoor, Assistant Capital Collateral Regional Counsel, Middle Region, Temple
Terrace, Florida,

for Appellee